## People ex rel. Ethel May Hickey v. Melissa L. Hickey and W. Vance Harrison.

1. CHILDREN OF DIVORCED PARENTS—*Care and Custody.*—The statute of this State, with regard to the care and custody of children of divorced persons, gives the court the power, when called upon to award such care and custody, to make such order as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just, and in the determination of such cases, the interests and welfare of the child are the supreme and controlling considerations with the court.

2. SAME—*When the Mother Takes the Precedence.*—An infant of tender years is generally left with the mother (if no objection to her is shown to exist), even when the father is without blame, merely because of his inability to bestow upon it that tender care which nature requires and which it is the peculiar province of the mother to supply, and this rule will apply with much force in cases of female children of a more advanced age.

3. SAME—*Effect of Decrees upon the Custody of Children.*—A decree awarding the custody of a child is *res judicata*, concluding the question. But it does not conclude the question for all time, since new facts may create new issues.

4. FOREIGN DECREES—*Status of Parent and Child.*—The relation of parent and child is a *status* rightfully, like marriage, regulated by the State in which the parties are domiciled. The order of one State

People v. Hickey.

does not operate as an estoppel of all future inquiry in the courts of another State wherein the child has acquired a domicile.

5. SAME—*Where a Foreign Decree is Void.*—Where a decree is *ex parte* against a father who, with his child, was domiciled in another State, the decree for custody is without jurisdiction, and therefore void.

**Habeas Corpus.**—Appeal from the Circuit Court of Cook County; the Hon. Elbridge Hanecy, Judge, presiding.  Heard in this court at the March term, 1899.  Affirmed.  Opinion filed November 27, 1899.

Roberts & Roberts, attorneys for appellant.

Where a final decree for divorce and alimony is rendered by a court of competent jurisdiction in one State, the Constitution of the United States requires that full faith and credit be given to it in every other State.  The said decree and judgment should have the same force and effect in the other States as the decree and judgment would have by the usages and customs of the State where it is rendered.  Dow v. Blake, 148 Ill. 76; Knowlton v. Knowlton, 155 Ill. 158; U. S. Con., Art. 4, Sec. 1; Rev. Statutes U. S., Sec. 905; Slack v. Perrine, 9 Appeal Cases Dist. of Col. 128; Laing v. Rigney, 160 U. S. 531.

The decree of divorce and custody, or a decretal order in habeas corpus proceedings, filed for the purpose of establishing the custody of a child, are final, and even if erroneous, will be considered conclusive of all matters that were or might have been offered in behalf of the parties therein, unless the same is reversed on appeal.  Slack v. Perrine, 9 Appeal Cases D. C., 154 and 155;  Laing v. Rigney, 160 U. S. 531.

The Supreme Court of this State has in no case extended any courtesy to a woman or a man by giving either of them the custody of minor children of tender years where it has been proven that either the husband or the wife was an adulterer or an adulteress.  Miner v. Miner, 11 Ill. 43; Hewitt v. Long, 76 Ill. 399.

The writ of habeas corpus is the proper, and, in fact, the only remedy accorded by law in a case, such as the one now at bar, by which a parent legally entitled to the cus-

tody of his minor child may obtain the custody thereof.
Hurd on Habeas Corpus, Chap. 9, Sec. 3, p. 453; Church on
Habeas Corpus, Sec. 423; People v. Mercein, 3 Hill, 399; 23
Wend. 64; Regina v. Clark, 40 Eng. L. & Eq. 114, 2 Kent
Com. 194.

PEASE & ALLEN and LOUIS J. PIERSON, attorneys for
appellees.

A judgment rendered in one of the United States on
notice by publication only, is not final nor conclusive
against the defendant, who was not resident, and not within
the jurisdiction of the court at any time pending the suit,
nor when the judgment was rendered therein. It may be
shown in an action in this State on a foreign judgment
thus rendered, that the defendant was not within the State
in which the judgment was rendered during such time, and
did not appear in the cause by attorney. Such a judgment
has no extra-territorial force, and is a nullity. Bimeler v.
Dawson, 4 Scam. 543; Smith v. Smith, 17 Ill. 482; Sim v.
Frank, 25 Ill. 125; Black on Judgments, Vol. 1, Sec. 218;
Thompson v. Whitman, 18 Wall. 459; Wharton on Evi-
dence (2d Ed.), Sec. 796; Pennoyer v. Neff, 95 U. S. 714–727.

In habeas corpus proceedings for the custody of a minor
child the court is not bound by merely the legal rights of
a parent or guardian, but will consider what is for the best
interests of the child. The welfare of the child is the par-
amount and controlling fact to be considered by the court.
Green v. Campbell, 35 W. Va. 702; Armstrong v. Stone, 9
Gratt. 102–107; Church on Habeas Corpus, Secs. 440–442;
Richards v. Collins, 45 N. J. Eq. 284–287; People v. Por-
ter, 23 Ill. App. 196; Chapsky v. Wood, 26 Kan. 650; Clark
v. Bayer, 32 Ohio St. 299.

MR. JUSTICE WINDES delivered the opinion of the court.

Thomas Hickey, in the name of the people, on the rela-
tion of Ethel May Hickey, his daughter, aged seven years,
brought habeas corpus against appellees in the Cook County
Circuit Court to have the custody of said Ethel taken from

her mother, the appellee, Melissa L. Hickey, and awarded to him.

Thomas Hickey, on November 29, 1897, obtained a divorce in the State of New Jersey from the appellee, Melissa L. Hickey, on the charge of adultery with William Vance Harrison, and was by the same decree awarded the custody of said Ethel.

Thomas and Melissa L. Hickey were married in 1884, and at the time the bill for divorce was filed the said Ethel was their only child, who resided with her mother in Cook county, Illinois. Melissa L. Hickey was not personally served with process from the New Jersey court, nor did she appear in the divorce proceeding, though she was, pursuant to a statute of the State of New Jersey then in force, authorizing such a proceeding, served with notice of an order entered by the New Jersey court in said divorce proceeding, directing her to appear, plead, demur or answer the bill therein, or that in default thereof such decree might be made against her as the chancellor might think equitable. The same statute of New Jersey provides that " any defendant upon whom such notice is served, as herein directed, shall be bound by the decree in such case as if he were served with process in this State." Melissa L. Hickey and the child Ethel were residing in said Cook county at the time said bill was filed, when said notice was served upon said Melissa and at the time the petition in this case was filed. She was at no time after the commencement of the divorce proceeding within the State of New Jersey.

Melissa J. Hickey and the appellee Harrison, prior to the said decree of divorce, lived together as husband and wife in Cook county, Illinois, but since the decree have been married, and were, at the time of the filing of the petition in this case, living together as husband and wife and had the custody and control of said Ethel, who had lived with them as their child from the month of May, 1897, when the child was clandestinely taken by its mother from the home of its grandmother in New Jersey and brought to the home of the former in Illinois.

The appellees answered the petition for habeas corpus and produced the child before the court. The issues were made and a hearing had before the Circuit Court, which resulted in an order remanding the child to the custody of its mother and said Harrison, and directing that the father should have the right at all reasonable times to see and converse with the child. From this order the appeal herein is taken.

After hearing the evidence produced upon the trial, consisting of the record of the proceedings in the New Jersey court and the testimony of witnesses with regard to the character and fitness of both the father and the mother of said child to have its care and custody, and of their respective ability and capacity to properly care for, educate and maintain her, the learned judge, in deciding the case said, in part, as follows :

" Neither of the parents have been such in the past as to commend themselves to anybody very highly, but I am not going to review the past of either of them. I shall assume that both of them have, without regard to what their past has been, intended to abstain from them so that either would be capable of taking care of this child. I think today that either one of them would take proper care and are capable of giving this child fair care and treatment, that is, I do not think the child would go very wrong if taken care of by either of them. I think that the mother is better capable of taking care of a little girl at her age than the father. This child is a very bright and intelligent little girl, as bright, probably, as any child you will find in a hundred, and the child says she would rather live with her mother than anybody else, and I have not any doubt of that from the examination I have made of the child, and I think, regardless of what the mother has been in the past, she is now living a reputable life. There is no evidence here that there ever was any misconduct with anybody except this man who is now her husband. Whether or not, the misconduct that she was guilty of with this man before he became her husband, it is immaterial for me to determine or to decide here. They are now man and wife, living respectably and respected by the neighbors in the community in which they live. They have apparently taken good care of this child, and I shall leave the child with the mother."

A careful reading and examination of the evidence in the record has led us to the same conclusion of the trial court with reference to the custody of the child. The evidence shows that the father is a steady, industrious and respectable man of good standing in the community where he lives—Trenton, N. J.—and that he earns about one thousand dollars per annum, and that his mother, to whose home he proposed to take the child and keep her, was a proper person to have the care of the child, though she was sixty years of age, a widow, and did not appear to be especially anxious to take the child into her home.

The language of the trial judge, with regard to the appellees and the child, above quoted, is amply sustained by the evidence, and we are unable to say that the result reached by the court and the order entered by him was not a proper disposition of the custody of the child and for its best interests.

The statute of this State, with regard to the care and custody of children of divorced persons, gives the court the power, when called upon to award such care and custody, to make such order " as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just; " and it has been held by the Supreme Court that in the determination of such cases the interests and welfare of the child are the supreme and controlling considerations with the court.    In Miner v. Miner, 11 Ill. 43-9, it was said, in speaking of this consideration, that " an infant of tender years is generally left with the mother (if no objection to her is shown to exist) even when the father is without blame, merely because of his inability to bestow upon it that tender care which nature requires, and which it is the peculiar province of the mother to supply.    This remark will apply with much force in cases of female children of a more advanced age."    The court then proceeds to show why this is so, and awards the custody of a girl seven or eight years old to its mother.

In Umlauf v. Umlauf, 128 Ill. 378, the same doctrine was affirmed, and the mother was awarded the custody of her

boy, between six and seven years old, although the divorce
was granted for her fault, and the father was found by the
court to be a fit person to have the child's custody, care and
tuition.

It is contended, however, on behalf of the father, that the
decree of the New Jersey court as to the custody of the
child Ethel is *res adjudicata* and binding upon the parties,
and should be given the same effect by the courts of Illinois
as in New Jersey. The case of Laing v. Rigney, 160 U. S.
531–9, is especially relied upon as sustaining this conten-
tion. It is true that in that case it was held that a decree
for alimony rendered in a New Jersey court under a service
had similar to the service in the case at bar, was binding
upon the defendant in the State of New York. The decis-
ion is good law and is sustained, in our opinion, by the
weight of authority, but it is not applicable to the question
here presented, viz., whether such a decree is *res adjudicata*
and binding upon the question of the custody of the child
of the divorced parties.

Mr. Bishop in his work on Marriage, Div. & Sep., Sec.
1189, Vol. 2, in speaking of the binding force of a foreign
custody order, says:

"The true rule in the State of its rendition is, that
it is *res judicata*, concluding the question. But it does
not conclude the question for all time, since new facts
may create new issues. Nor, since the relation of parent
and child is a *status* rightfully, like marriage, regu-
lated by any State in which the parties are domiciled, does
the order in one State operate as an estoppel of all future
inquiry in the courts of another State wherein the child has
acquired a domicile. * * * If the divorce was *ex parte*
against a father who, with his child, was domiciled in another
State, the decree for custody would be without jurisdiction,
and therefore void."

In Nelson on Div. and Sep., Sec. 980, Vol. 2, the author,
in speaking of the effect of such an order of custody, says:

"Such an order is not, however, *res judicata* as to the right
of the State to determine the custody of the child. The
decree of another State may be binding as to the parties,
but the courts of each State will have the right to deter-

mine anew who shall be entitled to the custody of the child, and where its welfare requires, the courts of the latter State may commit the custody of a child to a third person."

The following authorities fully sustain the law as laid down by the text writers: Kline v. Kline, 57 Ia. 386; Avery v. Avery, 33 Kan. 1–6; Kentzler v. Kentzler, 3 Wash. St. 166; Harris v. Harris, 20 S. E. Rep. (N. C.) 187; People v. Allen, 105 N. Y. 628; Thorndyke v. Rice, 24 Law Rep. 19.

It is also contended by appellant that because the appellees were shown to be guilty of adultery, that fact should be conclusive as against leaving the custody of the child with its mother. This, no doubt, is a very important consideration, but in connection with it is another matter of grave import, and that is that it is sought to take the child permanently beyond the jurisdiction of the Illinois court. We can not say that the learned trial judge was manifestly wrong in leaving the child with its mother. It was not shown that she ever was guilty of adultery with any one except the appellee Harrison, who is now her husband, and they are living respectably and are respected by their neighbors in the community in which they live, and have taken good care of the child. So far as the evidence shows, the child has been kept at school, and has attended Sunday school. The child herself is unusually bright and intelligent for one of her years, and when examined by the court says she would rather live with her mother than any one else. The mother's devotion to the child is shown by the fact that she made a journey from Illinois to New Jersey, and in the night time took the child from the home of its grandmother and brought it to her own home in Illinois.

The order of the Circuit Court is affirmed.