LITTA COHN, Appellant, *vs.* THOMAS Y. SCOTT, Appellee.

*Opinion filed December 17, 1907.*

1. DIVORCE—*the good of the child is the primary object in disposing of its custody.* In a proceeding to modify a divorce decree with respect to the custody of the child the good of the child is the primary consideration, and in determining that question the effect of parental example must be given due regard.

2. SAME—*chancellor's discretion as to awarding custody of a child must be based on evidence.* The discretion of the chancellor in the matter of awarding custody of children in a divorce proceeding is broad, but it is a judicial discretion, which is subject to review and must be based upon evidence heard in open court. (*Cowles* v. *Cowles*, 3 Gilm. 435, explained.)

3. SAME—*counsel cannot bind interests of a child by agreeing that chancellor shall make a personal investigation.* Counsel for the parties to a proceeding to modify a divorce decree with respect to the custody of a minor child cannot bind the interests of such child by an agreement that in addition to the evidence heard in open court the chancellor may make a personal investigation into the character and surroundings of the parties.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

In February, 1902, the appellant obtained a decree of divorce from appellee on the ground of extreme and repeated cruelty. The particulars of that case do not appear in the record here. Appellee did not defend the suit, and it was arranged at the time that he should have the custody of the one child of said marriage. The decree provided: "It is further ordered by the court that the sole care, custody and control of the child of the parties hereto, to-wit, Lake Y. Scott, be and the same is given to the said defendant, Thomas Y. Scott, until the further order of this court, and the prayer of said complainant for alimony and solicitor's fees is hereby denied." The case at

bar is a petition by appellant for the modification of this decree, so that she may have the custody of the child a portion of the time. The court modified the decree so as to give her the custody for about a month and a half that year, and from July 1 to August 31, inclusive, of each succeeding year. The Appellate Court reversed this decree, and an appeal was perfected to this court.

The child, Lake Y. Scott, was about six years of age at the time of the hearing, and was living with his father's mother in a small town near Springfield, Illinois. Numerous witnesses testified, and it is undisputed, that the grandmother is an excellent lady to have the care of the child; that she is comfortably situated and the child is healthy and well provided for and there is a good school for a town of that size. Appellee is a drug clerk in Springfield, and it is also undisputed that he is of good character and a proper person to have the custody of the child. Since the divorce he has re-married. After the divorce, and before the order as to custody was modified, he was accustomed to see his son about once a week. Appellant for the first year after the divorce appears to have seen the child perhaps once in each month or two. The next year she went down from Chicago to see the child three or four times, and the next year apparently not at all. She testified that it was considerable expense to drive two and a half miles from the station to the house where the child stayed, and that she wrote several times to have them bring the child to Springfield and save her the expense, which was not done. It appears that at the time of the divorce appellant was a saleswoman in a department store, and she testified she could not then support her son. For about a year before she re-married she had not been working and was living with a sister in a flat on Michigan avenue, near Twenty-fourth street, in Chicago. She testified that she was supported by a married sister. In April, 1905, she was at West Baden, Indiana. Her companions were the

wife of a horseman and also her present husband and another man. She stayed there about two weeks and spent considerable of her time playing roulette and betting on the races. She testified that she was married in October, 1905, to Cohn, her present husband. They had previously been living together as man and wife in a flat since about June of that year. It was testified to that appellant drank beer and whiskey quite frequently and was intoxicated on several occasions; that at one time she was nearly asphyxiated by gas while in that condition. It was also testified to that appellant and her husband cursed and swore frequently, and that there was considerable quarreling about some other woman, evidently her predecessor. It was shown from the stenographic transcript taken in another proceeding, that upon his own sworn testimony Cohn's business was that of running a gambling house, and had been such for eight or ten years.

Edward H. Morris, for appellant.

Pease, Smietanka & Polkey, for appellee.

Per Curiam: The great weight of the evidence in this record upholds the conclusion reached by the Appellate Court that appellee is, both by character and financial ability, a fit person to have the care and custody of his child, while the evidence as to appellant's personal fitness tends to prove the contrary. In disposing of the custody of children the primary object should always be the good of the child. (*Hewitt* v. *Long,* 76 Ill. 399; *In re Smith,* 13 id. 138.) Parental example has great influence in the development of young children, and due regard should be had to the character and conduct of the parties in awarding children. (14 Cyc. 808, and authorities cited.) The good of the child is the leading consideration, to which the claims of all other persons must yield. (2 Bishop on Marriage and Divorce,—5th ed.—pars. 532, 541.)

It is contended, however, that counsel agreed, after the evidence was heard in open court, that the chancellor himself should investigate the character of appellant and her home surroundings. It is very apparent from the record that he made no personal investigation. He expressly so said, but stated that from what he heard of the appellant's husband he was satisfied the child would not be injured in any way if placed in the custody of the mother.

Appellant relies upon the case of *Cowles* v. *Cowles,* 3 Gilm. 435, as laying down the rule that it is proper for the chancellor who hears a proceeding of this kind to make a personal investigation and base his finding thereon. The part of the opinion relied on in that case was not necessary to that decision, and we do not think it bears the construction contended for by appellant. Even if it did, the chancellor in that case made no personal investigation outside of the evidence presented in court, and it is very apparent that the decision of the chancellor there, as well as the finding of the, court, was based upon the, facts in the record. While a very large discretion must be permitted the chancellor hearing these cases, yet it must be a judicial discretion and subject to review on the evidence heard in open court. The agreement of counsel cannot bind as to the interests of the minor, which is the paramount question in this proceeding. If the chancellor could decide partly on investigation made out of court, then the whole decision might rest upon such an investigation and could not be reviewed. Such is not the law.

The evidence shows beyond all question that the best interests of the child required it to remain in the custody of the father. No obstacle appears to have been put in the way of the mother to visit her son in the past, and we see no reason on this record why the original order as to the custody of the child should be modified.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*