(No. 32072.—

CONSTANCE W. NYE, Appellee, *vs.* HERBERT NYE, Appellant.

*Opinion filed January 24, 1952—Rehearing denied March 17, 1952.*

410

Bristow, J., dissenting.

Fred A. Gariepy, Robert E. Cantwell, Jr., and Louis Yager Cantwell, all of Chicago, (John Spalding, of counsel,) for appellant.

Albert E. Jenner, Jr., of Chicago, (Johnston, Thompson, Raymond & Mayer, of counsel,) for appellee.

Mr. Justice Hershey delivered the opinion of the court:

This is an appeal from a decision of the Appellate Court of Illinois, First District, reversing a decree of the superior court of Cook County modifying a child custody award, and remanding the cause.

Defendant, Herbert Nye, appellant here, and plaintiff-appellee, formerly Constance Nye and now Mrs. Herbert Bruckner, were married on April 10, 1938. One child, a daughter, Diane, known as Penny, was born to the parties on October 1, 1942. Plaintiff filed suit for divorce from defendant in the superior court of Cook County on November 15, 1948, on the ground of desertion. On December 21, 1948, the court entered a decree granting plaintiff a divorce on the ground that defendant "wilfully deserted and absented himself from the plaintiff, without any reasonable cause or provocation, for the space of over one year immediately prior to the filing of this suit, and still persists in such desertion." The decree also recites that the par-

ties, represented and advised by their respective attorneys, freely and voluntarily entered into an agreement in writing, settling between themselves the custody and support of the child. The decree recited that it was for the best interests of the child that her custody be divided in accordance with that agreement. This agreement provided that the care, control, and custody of the child shall alternate, yearly, between the parties, with reasonable visitation privileges on week ends and holidays to the other party. Possession of a described home was to vest in the one then in custody of the child. Under this agreement plaintiff had custody of the child during the first year.

During the early morning hours of February 25, 1949, the defendant carried the child away from the plaintiff's custody without permission and contrary to the provisions of the divorce decree. Plaintiff on March 8, 1949, filed a petition praying the divorce decree be modified to allow her the decreed custody of the child without living in the specified house, that defendant be required to surrender the child to her, and that a rule be entered on defendant requiring him to show cause why he should not be punished for contempt of court for his seizure of the child contrary to the provisions of the divorce decree. Defendant entered an answer and a counterpetition praying the decree of divorce be modified so as to award him the sole care, custody, control, and education of the child, depriving plaintiff of all visitation privileges, and such other relief as seems just and equitable. Defendant alleged he entered the home occupied by plaintiff and the child at approximately 2:30 A.M., on February 25, 1949, and found plaintiff engaged in improper conduct with Herbert Bruckner, who was not then her husband, but who became such that afternoon. He alleged the marriage was consummated for the purpose of attempting to overcome the immoral act of that morning, that plaintiff and Bruckner committed such act in the home where she and the child resided, and

at other times had conducted themselves in an immoral manner, that the plaintiff had committed adultery many times with Bruckner and one J. B., and that plaintiff was unfit to have custody of the child at any time.

After several hearings on the pending issues, the custody provisions of the divorce decree were modified. Plaintiff was found unfit to have custody of the child, Penny, and permanent custody was awarded to defendant, the plaintiff to have custody during vacation period from July 1 to August 15 of each year. The chancellor stated in his opinion that since the decree for divorce the circumstances of the parties had materially changed, and, hence, custody should be changed in the best interests of the child's welfare.

Plaintiff then prosecuted an appeal to the Appellate Court. The chancellor entered an order refusing to make the appeal act as a *supersedeas*. That order was reversed and *supersedeas* allowed. *Nye* v. *Nye*, 342 Ill. App. 11.

The Appellate Court stated that evidence of the conduct of the plaintiff previous to the decree, not bearing on the alleged misconduct of Bruckner and the plaintiff in February, 1949, was not admissible on the question of change of circumstances, and that the divorce decree established plaintiff's fitness for custody at that time. Defendant was at that time satisfied as to plaintiff's fitness. Assuming the defense testimony of events prior to and after the divorce is true, the court found no change in the relationship of plaintiff and Bruckner between the decree and their marriage. There was no condition attached to plaintiff's custody rights, and no condition was broken by the alleged misconduct of plaintiff. There is no showing of unfitness on the ground of plaintiff's lack of care of Penny since the decree. The plaintiff's misconduct with Bruckner does not disqualify her as custodian of the child, nor is there any justifiable inference of promiscuity on her part. There is no evidence the child ever witnessed any misconduct on the plaintiff's part. Assuming the chancellor decided the

factual issues correctly, the court found the judgment of unfitness to be wrong as a matter of law. Finding no unfitness nor change of circumstances, the Appellate Court held that the modification of the decree giving sole custody to the defendant was an abuse of discretion. Accordingly, the Appellate Court reversed the modification decree and remanded the case for further proceedings not inconsistent with its opinion.

Defendant here prosecutes this appeal alleging the Appellate Court erred in reversing the modification decree by holding that the chancellor abused his discretion, that the chancellor's finding that plaintiff was an unfit person to have custody of the child as a matter of law was wrong, and that the evidence of plaintiff's misconduct prior to the decree of divorce was inadmissible because the modifying decree recited a change of circumstances subsequent to the divorce.

Plaintiff, in answering, first claimed this court was without jurisdiction to hear this appeal, as the judgment of the Appellate Court was not a final judgment as required by section 75 of the Civil Practice Act. It is a familiar rule that the question of the lack of jurisdiction of a court to entertain a particular case may be raised at any time during the proceedings in that court. *Town of Kingston* v. *Anderson*, 300 Ill. 577.

The words of the Appellate Court that the cause is remanded for "further proceedings not inconsistent with this opinion" are of no significance in determining what course should be pursued by the trial court. After a judgment is reversed and the cause is remanded the inferior tribunal can take only such further proceedings as conform to the judgment of the appellate tribunal. It is not required that specific directions shall be stated in an order reversing a judgment and remanding a cause, and it is the duty of the court to which the cause is remanded to examine the opinion and proceed in conformity with the

views expressed in it. It is the rule that where a court of appellate jurisdiction, in considering a cause, determines the issues and decides the questions involved upon their merits, and the judgment is reversed and the cause remanded with directions to proceed in conformity with the views expressed in the opinion, there is no power in the court below except to enter a final order or judgment without retrial. (*Roggenbuck* v. *Breuhaus,* 330 Ill. 294.) Here, the Appellate Court determined the issue and decided the question of custody on the merits. Thus, as to the custody, the trial court has no power but to issue a final order or decree. In such a case the judgment of the Appellate Court is final and subject to further review by this court. *Wenham* v. *International Packing Co.* 213 Ill. 397; *Roggenbuck* v. *Breuhaus,* 330 Ill. 294.

Under our divorce statute the court is clothed with a large discretion in determining to which parent a child will be given. It is usual in such cases, due to the tender years of the child and in consideration of its best interests, to entrust its care and custody to the mother, she being a fit and proper person to rear the child. (*Miner* v. *Miner,* 11 Ill. 43; *Draper* v. *Draper,* 68 Ill. 17.) The maternal affection is more active and better adapted to the care of the child. Especially is this true in the case of a minor daughter, where the care and guidance of a mother's hand is doubly important. This principle has become so well fixed and followed in this State that this court has not in recent years been called to rule upon it. Therefore, compelling evidence must be presented, proving the mother to be an unfit person, to cause the custody of her minor daughter to be denied her, or there must be a positive showing that to deny custody to the mother would be for the best interests of the child.

*People* v. *Hickey,* 86 Ill. App. 20, takes the above principle and applies it to a circumstance even more appalling than that alleged here. In that case the custody of a minor

daughter was left with the mother even though the decree of divorce was allowed because of the adultery of the mother, she having lived as husband and wife with another man prior to the divorce. The court focused its attention primarily on the welfare of the child, and based its determination on the fact that the mother had married her paramour, no other indiscretions were shown, and she now led a respected life in a good community with her now husband. The court found nothing which would be detrimental to the best interests of the child, but rather found her welfare dictated the custody of the mother. This same principle has been applied in other cases in this State, and this specific case has been followed in many other jurisdictions. The prior misconduct gave no evidence of adverse effect on the future welfare of the child. Where the mother is able to care for her minor daughter and is not shown to lack the proper attributes of good motherhood, past misconduct, where the evidence indicates no probable future misconduct, should not be a basis for denying custody to the mother. To do so would be not only to punish the mother for her past misconduct, but, more important, would punish the child by denying her a mother's care and guidance. It is not the purpose of this court, nor of any court, to so punish an innocent child. The guiding star is and must be, at all times, the best interest of the child. Other than the alleged prior misconduct on the wife's part here, she is shown to be an affectionate, dutiful mother, giving proper care and guidance to her child. She is married to the only man with whom she allegedly was indiscreet. She has a good home and is respected in her community. She has never been absolutely proved to be an adultress, nor was any of the alleged misconduct absolutely proved. No different conduct has allegedly occurred that the husband does not declare he was generally aware of at the time of the decree. At that time he voluntarily entered into a custody agreement which accepted her as a fit person. The

decree of the court accepted her as a fit person. The Appellate Court was, therefore, correct in its determination of fitness.

It is true that the chancellor is given a large discretion in awarding custody of minor children. However, such discretion is a judicial one and not unlimited. It is subject to review. *Cohn* v. *Scott,* 231 Ill. 556.

After a divorce decree in this State the custody of the children is always subject to the order of the court which enters the decree and may be changed from time to time as the best interests of the children demand. The decree is *res judicata* as to the facts which existed at the time it was entered but not as to facts arising thereafter. (*People ex rel. Stockham* v. *Schaedel,* 340 Ill. 560.) In proceedings involving child custody the order of the court or judge having competent jurisdiction is a final order, and is binding upon the parties under the same facts and so long as the same conditions exist as did at the time of the hearing and order. (*Cormack* v. *Marshall,* 211 Ill. 519.) New conditions must have arisen to warrant the court changing its prior custody determination, (*Stafford* v. *Stafford,* 299 Ill. 438,) where the court was not imposed on by perjury or collusion of the parties. The trial court, here, in entering its modification decree, relied on changed conditions. Assuming defendant's allegations are true, there is no showing here of change in conditions warranting a modification of the custody decree. The defendant's testimony of the relationship of plaintiff and Bruckner shows no change between the decree and their marriage. There is no change in condition that adversely affects the best interests of Penny.

The determination of the Appellate Court was correct on all points of law. There was no change of conditions as required by law, there was no proper determination of unfitness on plaintiff's part, and the modification decree was thus an abuse of discretion by the chancellor. This

judgment, however, is binding only in relation to the case here presented, and effects no prejudice to defendant's right to question the propriety of the custody decree should grounds therefor arise hereafter.

The judgment of the Appellate Court is affirmed in all respects.                                          *Judgment affirmed.*

Mr. JUSTICE BRISTOW, dissenting.

I am disposed to dissent to the majority opinion in this case because it disregards one of the cardinal rules in judicial review, namely, that the findings of a trial court on issues of fact will not be disturbed unless they appear to be against the manifest weight of the evidence.

It appears without contradiction that the Nye home was broken up because of the wrongful intervention of Herbert Bruckner, the present third husband of Constance Nye; that the latter obtained a divorce from Herbert Nye in December, 1948, on the ground of desertion, and in that proceeding there was an agreed order on the custody of their daughter, Penny. Implicit in the foregoing solution of their marital difficulties was the understanding that the mother of Penny should forego a continuation of her adulterous relationship with her present husband, Herbert Bruckner. The record clearly indicates that she was not faithful to this undertaking.

On February 24, Constance and Bruckner were entertaining guests in her home in Wayne, Illinois. The visitors left at 11:30 P.M., but Herbert Bruckner remained. Herbert Nye and two detectives watched the home from without, and at 2:30 A.M. they entered and found the two engaged in sexual intercourse. Constance fully cognizant of her guilt said, "You outsmarted me in this one, why don't you shake on it?" Then Herbert Nye, without any protest from the mother, removed their daughter, who was lying. asleep in the adjoining room, and took her to his home. The present proceedings ensued.

To minimize the gravity of her sins and obliquity, Constance testified that she and Bruckner had planned on being married on the very day her home was invaded. She also denied having sexual intercourse on that occasion but acknowledged that she was engaged in "necking" in one of its early stages. When asked if she would take a lie-detection test on this issue, she declined, saying that she was not "too familiar with its operation." Let us examine the facts regarding the reasonableness of her story that she was to be married on February 25. The trial court, after a study of the behavior and appearance of Constance on the witness stand and an analysis of her testimony in that regard, determined that her story was a synthetic design for exculpation. It has been heretofore noted that on the evening of February 24 Constance had in her home several guests; they remained until 11:30 in the evening. It is significant to note that not one of those persons appeared in this hearing to state that they had been told of the plans of their host and hostess to be married the following day. When they were confronted with their intruders on the following morning their attitude was one more of defenselessness rather than resentfulness. They entered no protest against the rude intrusion and they failed to remonstrate, stating that they were going to be married that afternoon. Bewildered and supinely they surrendered the child to its father.

Mrs. Nye and Bruckner were married in Glenview, Illinois, a village with which neither of them had been previously identified. All the arrangements for the ceremony were made by a Mr. and Mrs. Sweeney, who are related to Bruckner. They arranged for a protestant minister to perform the ceremony, whom Bruckner and Constance had never seen or heard of before. It cannot be overlooked that this pastor did not appear as a witness to testify that the plans for his appearance at the church had been made previous to the day of the marriage. The vows were ex-

changed in a church in Glenview, the denomination of which is different from that of either of the contracting parties. It is also interesting to observe that neither Mr. nor Mrs. Sweeney appeared and testified in this case. The absence of the pastor and Mr. and Mrs. Sweeney is not explained. When asked about their medical examination, which is a prerequisite to obtaining the marriage license, they were extremely vague and uncertain. They were not sure whether it was St. Francis Hospital or St. Joe Hospital. A witness from such an institution with the records would have been extremely helpful. It is very apparent that the fantastic story told by Constance and Bruckner that they had planned their marriage on February 25 was sadly in need of support. Her resourceful lawyer would be the first to recognize this desperate need, but there was not a particle of evidence adduced on this hearing to support them on this important issue.

The chancellor in this cause is a renowned jurist of thirty years' experience in this particular field of law. Constance presented a defense on this hearing that no doubt levied a great strain upon his credulity.

The prevailing opinion rejects the determination of the trial court that the divorce decree pertaining to the custody question should be modified because of changed conditions. This language was employed in connection therewith: "Assuming defendant's allegations are true, there is no showing here of a change in conditions warranting a modification of the custody decree." In other words, Bruckner and Constance were recognized adulterers at the time of the divorce decree. Therefore, the court adopts the unique position that since they simply continued their clandestine relationship there was no change in conditions.

The chancellor in this cause, after a long hearing, reached the conclusion and made the finding that Constance was an unfit mother. It has for a long time been the law in this State that such a finding should not be disturbed

unless it is obviously wrong. Many factors must be taken into consideration by the trial judge in determining the fitness or unfitness of a parent. He must have in mind the character, moral stability, temperament, personality and honesty of the persons under consideration. Personal observation of the parties plays a tremendously important part in making a correct determination. Such intangibles cannot be transcribed into a record on appeal. For these reasons, there must be an obvious abuse of discretion before the chancellor's conclusions are disturbed on review. In my opinion the record alone is sufficient justification for the trial court's determination that Constance is an unfit mother. Appropriate is the language of Justice Mulkey in *Calvert v. Carpenter*, 96 Ill. 63: "It can scarcely be repeated too often, that the judge and the jury who try a case in the court below have vastly superior advantages for the ascertainment of truth and the detection of falsehood over this court sitting as a court of review. All we can do is to follow with the eye the cold words of the witness as transcribed upon the record, knowing at the same time, from actual experience, that more or less of what the witness actually did say is always lost in the process of transcribing. But the main difficulty does not lie here. There is an inherent impossibility of determining with any degree of accuracy what credit is justly due to a witness from merely reading the words spoken by him, even if there were no doubt as to the identity of the words. However artful a corrupt witness may be, there is generally, under the pressure of a skillful cross-examination, something in his manner or bearing on the stand that betrays him, and thereby destroys the force of his testimony. Many of the real tests of truth by which the artful witness is exposed, in the very nature of things cannot be transcribed upon the record, and hence they can never be considered by this court. For this reason the rule is firmly established, that where, as in this case, there is an irreconcilable conflict

in the testimony, this court will not reverse the judgment of the trial court, where the evidence of the successful party, when considered by itself, is clearly sufficient to sustain the verdict."

Justice Gunn, in passing upon a similar issue in *Buehler* v. *Buehler,* 373 Ill. 626, at 630, said: "Apparently the trial court went to great lengths to ascertain how the welfare of each child might be best served in making his award of their custody. * * * All the parties were before that court and from observation and consultation, as well as from the testimony, it was in a better position to determine that matter than could an appellate tribunal."