**Beverly Northrup Richton, Plaintiff-Appellee, v. Maurino R. Richton, Defendant-Appellant.**

**Gen. No. 48,905.**

First District, First Division.

November 26, 1963.

Cook & Lavery, of Chicago (John A. Cook and Harry D. Lavery, of counsel), for appellant.

Nathan Gomberg & Irving S. Friedman, of Chicago (Irving S. Friedman, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This appeal is taken by defendant from an order denying the father's petition for change of custody of a minor child twelve years of age and for other relief.

The parties were divorced on June 21, 1956, and the care, custody, and control of Camille Maureen Richton, then six years of age, was given to the mother. The decree provided, amongst other things, that the defendant father shall have all reasonable visitation rights; that in the event the mother elected to remove the child permanently from the jurisdiction of the court, the defendant was entitled to have custody of Camille for a period of three months during the usual and customary vacation period, and that the

parents "shall have alternate annual custody" of the child during the Christmas vacation period, the transportation to be borne equally between them. Subsequently, a petition was filed by defendant concerning visitation rights and an order was entered on December 6, 1956, providing alternate weekend visitation and alternate holiday visitation to defendant, and on plaintiff's petition permitted her to take the child to California from December 20, 1956, to December 30, 1956. Thereafter, the question of visitation and other matters were again put in issue by the father's petition and this matter and other controversies between the parties were referred to Master in Chancery Nathan M. Cohen, who, in part, recommended on July 30, 1959, "that except for vacation period during which either of the parties may in accordance with any modification of the Decree entered as a result of this report, be permitted to take the child on vacation trips, neither party shall remove the child from the State of Illinois without prior order of Court permitting such removal." These findings were later approved by a general order of Judge Ezra Clark which was entered on June 27, 1961, and the exceptions of the mother on this point were overruled.

On December 22, 1961, Beverly Richton filed her petition to remove Camille to California setting forth that it would be for the best interest of the child, as well as being better for the petitioner's welfare, that she be permitted to remove the child to California in accordance with the decretal provision for that purpose. In answer to the petition, the father's answer, filed on January 24, 1962, set forth the Master's recommendations and alleged that Camille was now twelve years of age and attended the North Shore Boarding School where she remains overnight except for weekends and vacations when she lives alternately with one parent or the other. The answer also alleged that

it was in the child's best interest not to interrupt her schooling and further that the father would be denied his alternate weekend visitations. The answer further alleged that the mother was using the child as a pawn and had previously threatened to institute proceedings to remove Camille to California and that on August 23, 1961, she sent him the following telegram ". . . [p]ursuant to our phone conversation at 7:45 p. m. tonight in which I demand return of Camille immediately and your refusal to do so I am requesting my attorney to institute proceedings for a request to leave the State with Camille. Said circumstances will be outlined in petition."

The mother, by her reply filed on January 24, 1962, alleged that the transcript of testimony taken by Master Cohen revealed that at no time was there a petition pending or testimony introduced for the purpose of modifying the rights granted to the plaintiff to remove the child from the State of Illinois, and that the Master's recommendation on that point was merely dictum. The mother further denied that the child remained at school overnight except on occasions of emergency or occasionally at the child's request and that the child would have no difficulty making new friends in California. The mother denied she was using the child as a pawn and alleged that one of the prime factors in the decree was her right to remove the child to California where she formerly resided. On February 14, 1962, this matter came on for hearing before Judge Daly who entered an order continuing the hearing on plaintiff's petition to permanently remove the child from the State of Illinois, to June 7, 1962.

While the aforementioned proceedings were pending the father filed a petition on April 11, 1962, in which after realleging the matters heretofore mentioned, he alleged that Judge William V. Daly, on January 24, 1962, ordered the mother to complete the discovery

deposition; that on February 14, 1962, Judge Daly, after examining the pleadings and after hearing argument of counsel, stated he would not interrupt the child's schooling at that time and therefore would not then permit the mother to take the child to California; that on April 2, 1962, without any knowledge on his part, the plaintiff mother obtained a transcript of Camille's credits from the North Shore School and upon information and belief he believes she went to California with Camille; that the plaintiff did not intend to return Camille to the State of Illinois in disregard of the orders of court; that the plaintiff is not a fit and proper person to have the care, custody, control and education of Camille and prayed that the decree be modified by giving custody of the child to the defendant and that the plaintiff be held in contempt of court for removing the child out of the State of Illinois, contrary to the order of court.

On April 13, 1962, an order was entered by Judge Daly directing the appearance of plaintiff in court on April 19, 1962, and to show cause why she should not be held in contempt of court by reason of her failure and refusal to comply with the order of that court entered therein on June 27, 1961, approving the recommendation contained in the Master's Report that "neither party shall remove the child from the State of Illinois without prior order of court permitting such removal." On April 19, 1962, Judge Daly ordered each party to file briefs and continued the matter to May 4, 1962. The plaintiff answered the petition and alleged she had the right to remove the child under the decree for divorce.

The plaintiff contends that she had the legal right granted to her by the divorce decree to remove the child from the State of Illinois "and the fact that she at one time misapprehended her rights and filed a petition asking for that which she already had, did not

alter her rights. There was never an order modifying the decree and divesting the plaintiff of the right of removal."

■ ■ Plaintiff properly argues that the power of a Master in Chancery is ministerial and not judicial. He cannot make recommendations on matters not referred to him. Almar Forming Mach. Co. v. F. & W. Metal Forming Mach. Co., 301 Ill App 591, 23 NE2d 229.

It is argued that the only matters referred to the Master in Chancery were matters relating to an alleged change in defendant's income, defendant's petition relating to visitation and return of personal property and plaintiff's petition for a rule to show cause on the allegations of plaintiff that the defendant failed to comply with the orders and the decree of divorce; therefore the Master had no jurisdiction to recommend a modification of the divorce decree wherein the plaintiff was given the right to remove the child permanently from Illinois.

The Master saw and heard many witnesses, including the parents, and then made a comprehensive report on July 30, 1959, which contained a summary of the evidence as well as his conclusions and recommendations. With regard to visitation the Master specifically found:

"(1) The child of the parties, Camille, is nine years of age.

(2) The distance between the residence of the mother where Camille resides and that of the father, defendant herein, is 35 to 40 miles.

(3) The parties herein have bickered and quarreled over visitation to the inevitable detriment of the welfare of the child, Camille, and have permitted animosity toward one another to take

precedence over the unselfish devotion owed to the child by each of the parties hereto.

(4) Both parties are fit and proper parents and each should be permitted to the enjoyment of the child's company.

(5) It is essential to the well-being of the child that she be permitted ample periods in the company of both parents to the end that the child may recognize and appreciate the affection and devotion of both parents."

The Master also recommended, in great detail, the best method of visitation by the parents, including alternating visitations on birthdays, religious and national holidays when the child is out of school and many other respective visitation rights by the parents. The Master concluded and recommended "that except for vacation periods during which either of the parties may, in accordance with any modification of the Decree entered as a result of this report, be permitted to take the child on vacation trips, *neither party shall remove the child from the State of Illinois, without prior order of court permitting such removal."* (Emphasis ours.) The plaintiff filed objections to this report which included an objection to the last aforementioned quoted recommendation of the Master and the objections to the report were heard as exceptions by Judge Ezra Clark.

An order was entered on June 27, 1961, by Judge Clark (which after reciting that the parties were present, and the court having read the Master's Report and objections thereto and having heard arguments of counsel) approved the Master's Report with certain exceptions that do not bear on the controversy here. No appeal was taken from that order. We think it fair to conclude from the record that all of the matters recommended by the Master and ordered by the

court relating to visitation was subsequently complied with by the parties.

The record shows that after the entry of the divorce decree the visitation rights of the parties were radically changed to meet the changed circumstances of the parties. As concerns custody of the children, even the decree for divorce is subject to modification as the child's best interest demands. Tosh v. Jones, 1 Ill App2d 215, 117 NE2d 307. No agreement of the parties can control the courts when they have before them questions determining the welfare of children within their jurisdiction. Bailey v. Bailey, 157 Ill App 74. The recommendation by the Master to modify the decree, requiring the plaintiff mother to get prior court permission before taking the child out of Illinois, was necessarily interwoven with the new visitation rights of the parties, and, in our opinion, this recommendation was a proper matter to be considered by the Master under the reference to him.

The record discloses that the matter proceeded to trial on May 4, 1962, before Judge Canel. The Chancellor, at the outset and before any testimony was introduced, ruled that the plaintiff had an absolute vested right under the decree to take the child out of the State of Illinois. The defendant therefore was not permitted to introduce testimony bearing on this subject nor was plaintiff required to explain why she abruptly took the child out of school during a midterm, without notice to the father and without court order. The court ruling was predicated on the proposition that this evidence "did not go to the fitness or unfitness of the mother." We disagree with this conclusion. The Chancellor stated that the Master in Chancery went beyond the jurisdiction of the reference when he recommended that the plaintiff could not remove the child from the State of Illinois without prior approval of the court. The court went on to say

135

that, in his opinion, the Master had no right to even discuss the matter, "because here is a decree without a reservation."

At the conclusion of other testimony given by defendant and by witnesses on his behalf, no witnesses appearing for the plaintiff, the court entered an order on May 7, 1962, which is here appealed. That order recites that after considering the evidence, examining the pleadings and the transcript of testimony before the Master, the court found "that the Master in Chancery did not have the jurisdiction to enter any orders to modify the decree of divorce, insofar as under the decree Beverly Richton did not require written consent or an order of court to remove the said minor child, Camille, from the State of Illinois." The court vacated the order requiring the plaintiff to produce the minor child on April 19, 1962, and dismissed the rule to show cause and discharged the plaintiff on the rule; the order denied the request for change of custody and the defendant's request that the minor child be returned to the State of Illinois; the request for fees by plaintiff's counsel for defending the petition was continued to May 14, 1962, on which date the court, after hearing testimony, ordered defendant to pay plaintiff's counsel the sum of $1207.50, as fees, and $146.70 for court reporter's fees. The defendant also appeals this order.

We have carefully examined the record of proceedings which was certified by Judge Daly and have concluded that the plaintiff took the minor child out of the jurisdiction of the State of Illinois, contrary to the order of court. Plaintiff's counsel insists that the divorce decree gave the plaintiff the right to remove the child permanently from Illinois and that the removal has no bearing on the question of fitness. The child was six years old when the decree was entered and was almost twelve years old when the controversy

before us took place. She was then in the last half of the seventh grade of the North Shore School which she had attended for five years. She was doing well at school and had many friends. Due to the schedule which her parents followed she was able to spend about half of her free time with either parent alternately. When the plaintiff abruptly took the child out of school and out of Illinois she knew of the Master's findings as heretofore mentioned, and that the exceptions to his report were denied, and that an order was entered approving his report. The plaintiff also was present in court on February 14, 1962, to prosecute her petition seeking a court order permitting her to remove the child permanently to California where she desired to establish her residence. The provision of the divorce decree reciting that the plaintiff had the right to remove the child from Illinois was fully presented and argued by plaintiff's counsel at this hearing before Judge Daly. After considering the petition of plaintiff and the answer filed thereto Judge Daly ruled on her petition and said, "I think it would be best for the child, at least during the rest of the school year, not to send her to other surroundings or to another school where the child would have to readjust in the middle of the school year. I think the best thing to do in this matter is to allow this child to finish this grade and then decide whether or not we can look in favor upon any circumstances which allow the child to be taken to another jurisdiction. *That is the decision of the court.*" (Emphasis ours.) When Judge Daly advised the parties that he had not decided as yet whether plaintiff could take the child to California, the plaintiff's counsel informed the court he would present evidence at the next hearing to show that the child would not be harmed by a change of residence to California. The plaintiff then advised the court that the school term

137

ended on June 22. Thereupon plaintiff's motion for leave to take the child out of school and out of Illinois was continued to June 7. Less than three weeks after the aforementioned hearing took place the plaintiff took the child out of school and removed her to California without court permission or notice to the child's father. Judge Daly then ordered the appearance of plaintiff in court on April 19, 1962, and to show cause why she should not be held in contempt of court.

The authority to make orders concerning the custody of minor children continues until the child attains his or her majority. Kramp v. Kramp, 2 Ill App2d 17, 117 NE2d 859. During the time when the child's custody is under the control of the court, the custody order may from time to time be revised, altered or modified by the court as the best interests of the child may demand and as may appear reasonable and proper. ILP Divorce § 217; Nye v. Nye, 411 Ill 408, 105 NE2d 300. A decree fixing the custody of a child is final only upon the conditions then existing. Thomas v. Thomas, 233 Ill App 488. The changed conditions necessary for the modification of the original custody order are those which bear upon the fitness of the custodial parent and the interests of the child, Bulandr v. Bulandr, 23 Ill App2d 299, 162 NE2d 585. The custodial parent therefore has duties to the court, to the other parent and to the child. In the instant case there appears to have been at the least a failure on the part of the custodial parent to carry out her duties to the court and there may have been a failure to fulfill her responsibilities to the other parent and to the child as well.

The conduct of the plaintiff, in our opinion, bears upon the fitness of the plaintiff to have the custody of the minor child. Unfitness, however, does not follow conclusively from a failure to comply with the order or orders of the court. Bulandr v. Bulandr, 23

Ill App2d 299, 162 NE2d 585. Therefore, nothing we have expressed in this opinion should be considered as determining the question of the fitness of the plaintiff to continue to have custody of the child.

The plaintiff should have been required to answer the rule to show cause and she should defend her actions in taking the child out of the State of Illinois without first obtaining a court order to do so. It would be a travesty on justice to say that a litigant could disobey an order of the court of which the litigant was well aware. The defendant was not permitted to present testimony bearing upon the described actions of the plaintiff. The Chancellor thus committed reversible error in declining to hear this testimony before ruling on the fitness of the mother to have custody of the minor child of the parties and before ruling on the matter of attorney's fees.

For the reason stated the orders of the Superior Court entered on May 7 and May 14, 1962, including the order awarding fees to the attorney for the plaintiff, are hereby reversed and the cause is remanded with directions to proceed in a manner consistent with the views expressed.

Reversed and remanded.

MURPHY, J., concurs.

ENGLISH, P. J., dissenting:
We have reversed and remanded for further proceedings, but I have difficulty (which I fear may be shared by the trial court) in understanding what directions are to govern those proceedings. I, therefore, find it hard to express my dissent, and feel required to do so in relation to alternative constructions of the majority opinion.

It seems that one of the first matters to be heard will deal with a rule on plaintiff to show cause why

she should not be held in contempt for having taken her child to California without express order of court. It is said that she "should have been required to answer the rule to show cause and she should defend her actions" in removing the child from the jurisdiction. In using the term "the rule to show cause" I would first assume that reference is made to the rule to show cause which was actually issued against plaintiff in the trial court on April 12, 1962 by Judge Daly; to which rule plaintiff did file an answer; on which rule and answer thereto a hearing was held; and in regard to which the decision of the chancellor was embodied in the order of May 7, 1962 from which this appeal has been taken.

The chancellor found that plaintiff was not in contempt of court, and ordered that the rule be dismissed and plaintiff discharged. This portion of the order was included in defendant's notice of appeal describing the order of May 7, but a careful reading of the notice raises serious doubt as to whether an appeal was taken from that part of the order. The essence of the relief prayed in the notice of appeal related only to transfer of the child's custody to defendant, and this court was not asked to find that plaintiff had been in contempt. That this was not an oversight on defendant's part is demonstrated by the fact that the issue was not raised at all in defendant's briefs filed in this court, nor was it mentioned in oral argument. I would certainly conclude, therefore, that the question of possible contempt on the part of plaintiff is not before this court, having never been raised, or, if raised, then waived or abandoned. Thomas v. Smith, 11 Ill App2d 310, 320, 137 NE2d 117; Green v. Waller, 17 Ill2d 392, 161 NE2d 858.

Assuming, however, that the trial court's decision on the contempt rule is, somehow, presented for our review, it would appear to be perfectly clear that it

should be affirmed, a conclusion which in all probability prompted defendant to avoid the issue in this court.

We start with the custody provisions of the divorce decree. Care, custody and control of the child were awarded to plaintiff, and it was provided further that "in the event the plaintiff elects to remove permanently the minor child of the parties hereto from the jurisdiction of this court," then defendant would be entitled to have the child with him during the three months of summer vacation, and in alternate years during the Christmas period with "transportation in connection therewith to be borne equally by the parties hereto." These were the custody arrangements embodied in the decree pursuant to the stipulation of defendant.

Without more, I cannot imagine that a contest would have arisen if plaintiff had exercised her election to take the child to California, and, I think, the correctness of the chancellor's ruling would not have been questioned when he found that the decree did not require the consent of defendant nor a further order of court to authorize removal of the child from Illinois.

Our next point of inquiry, therefore, is whether the situation was altered by the filing and approval of the Master's report. I believe it was not.

The majority concede that recommendations of a Master on matters not referred to him would be of no consequence. The abstract does not set forth the two orders of reference except to state that they covered "the question of defendant's change in income," "defendant's petitions relating to visitation and return of personal property and plaintiff's petitions for rule to show cause." Plaintiff contends, and the chancellor found, that these orders of reference did not authorize the Master to recommend changing the decree in the matter of plaintiff's authority to remove the child from Illinois. I am inclined to agree, but consider it

141

unnecessary to do more than mention this point because in any event the Master's recommendation in this regard was never acted upon by the court. The decree was never modified in this respect.

One gains the impression from the majority opinion that the court specifically approved the recommendation of the Master that a court order be required to remove the child from Illinois. This the court did not do. The pertinent order of June 27, 1961 had two main parts: (1) it "ordered that the report of the Master shall be approved" except as to fees and costs, which matters were set for hearing at a later date; and (2) it "ordered that the Decree heretofore entered on June 21, 1956 shall be and is hereby modified" to provide that thenceforward defendant should pay $200 per month for support of the child. Thus the court accepted one of the Master's recommendations and modified the decree accordingly, but it did not modify the decree's provision relating to removal of the child from Illinois. I consider the conclusion inescapable that the decree remained unmodified except in the one respect specifically dealt with by the order.

That the Master himself believed he was doing nothing more than suggesting modification of the divorce decree, is to be noted in the language prefacing his recommendation, where he said, "in accordance with any modification of the Decree entered as a result of this report . . . ." There was a "modification of the Decree entered as a result of this report," but the recommendation now in question was simply not included.

It has long been the law in this state (I can find no contrary decisions) that an order confirming a Master's report is not the equivalent of, and does not have the effect of, an order or decree entered by the court in conformity with the findings and recommendations of the report. Chicago Bill Posting Co. v.

Schuster, 88 Ill App 513; * ILP Chancery § 424. The majority do not adhere to this proposition, but, rather, attribute to the order approving the report a character (sufficient in itself to sustain contempt proceedings) unjustified in principle and unsupported by an over-all view of the record in this case. They also misconceive, I believe, the nature of the order as to its finality, when inferentially they ascribe to plaintiff some sort of laxness in not contesting the matter further at the time. They say, "No appeal was taken from that order." Yet, we have only recently stated that such an order is not appealable. Gribben v. Interstate Motor Freight System Co., 38 Ill App2d 123, 126, 186 NE2d 100.

As mentioned above, the rule to show cause was issued, answered and ruled upon by the chancellor on the basis of alleged failure to comply with the order approving the Master's report. The majority, however, in considering the question of contempt, go beyond that record to emphasize an oral decision ** of Judge Daly to the effect that the child should not be removed from school in Chicago for the remainder of the school year. The opinion states, in that regard, that "[i]t would be a travesty on justice to say that a litigant could disobey an order of the court of which the litigant was well aware."

By these references in the majority opinion to the oral comments by Judge Daly I would assume that the trial court is directed to conduct a contempt hearing

---

* In the cited case the Master's report had recommended dissolution of a previously entered injunction. An order was entered approving and confirming the report, but no further order of decree was entered dissolving the injunction. It was held that the injunction had not been dissolved, and remained in full force and effect.

** The decision quoted in the majority opinion was never reduced to the form of a written order or decree.

which will encompass these matters even though they unquestionably lie outside the scope of the contempt pleadings presently on file. It was Judge Daly, himself, who issued the rule to show cause, and he did so at a time subsequent to his remarks which are relied upon in the majority opinion, yet he did not see fit to base the rule on his oral "decision." Do we now direct the trial court to issue a new rule to show cause on this basis, and to proceed to hearing thereon when no party has suggested it, and the trial court, in the exercise of its own discretion, had not seen fit to do so? Apparently we do, but I don't think that it is a proper direction.

One reason the trial court may not have conducted such a contempt hearing could have been that Judge Daly might have believed, as I do, that in equity proceedings "[t]he oral announcement or remarks of the court expressing its opinion on the question at issue do not constitute the decree of the court, and are of no binding force unless embodied in a written decree which is approved by the court and filed with the clerk to be entered in the records of the court." ILP Chancery § 443; Anastaplo v. Radford, 14 Ill2d 526, 530, 153 NE2d 37; Miller v. Miller, 376 Ill 628, 632, 35 NE2d 62; see also People ex rel. Schwartz v. Fagerholm, 17 Ill2d 131, 135, 161 NE2d 20; Jackman v. North, 398 Ill 90, 105, 75 NE2d 324.

The central point of all the matters presented for the chancellor's decision was, and will be again on remand, the petition of defendant for change of the child's custody from her mother to him. Aside from directing the chancellor to reopen the question of contempt, the majority find, without specification, that there was reversible error in the trial court's declining to hear testimony "bearing on the described actions of the plaintiff." These are apparently the actions of plaintiff in taking the child with her to plaintiff's

mother's home in California. I fail to see how the excluded proof would have any bearing upon the ultimate decision as to custody in this case.

I have examined some 36 points raised by defendant concerning the exclusion of proof offered by him. About half related to showing that defendant would be a fit person to have custody of the child if she were taken from her mother. Since the chancellor did not find the mother unfit, this testimony was concerned only with a secondary issue which was never reached.* Furthermore, plaintiff has never contended that defendant was not a fit father to the child. The opposite was conceded throughout the proceedings, and I believe it would be proper for us to take notice that defendant, a member of the bar, is a person of good reputation, and one who has repeatedly been honored by the citizens in his community. All this was also true, however, at the time of the divorce decree when defendant stipulated that plaintiff should have custody of their child.

Numerous other points on exclusion of testimony related to plaintiff's having taken the child from Illinois without specific order of court. There was no question of fact in this matter, the pleadings having been in agreement on the issue. Plaintiff did, however, justify her action on the basis of the decree, and thus raised a question of law which the chancellor decided in her favor, and properly so, in my opinion. But even a contrary ruling on this question would not render admissible further testimony which would simply reiterate facts already before the court.

---

* The divorce decree, of course, found plaintiff to be a fit person for custody of the child. Ironically, the only other finding on that subject is that contained in the Master's report which is so strongly relied upon by defendant and by the majority here. The Master found that "[b]oth parties are fit and proper parents."

The balance of the points on exclusion of evidence involved testimony or offers of proof properly denied for various reasons: immateriality, incompetency of the witness to testify to the facts in question, improper opinion evidence, and the like, with much of the proffered material actually demonstrating the good care the child had received from plaintiff and the progress she had made in school. If there was some testimony excluded which should have been admitted, its total weight would have been inconsequential, in my opinion.

The majority concede that unfitness for child custody is not to be determined from failure to comply with a court order, citing Bulandr v. Bulandr, 23 Ill App2d 299, 162 NE2d 585. Particularly pertinent to the facts here, is the following language from the Bulandr opinion: "Nor can the child be used as a basis for punishing the contumacy of a party in a contempt proceeding, as appears to have been the case here. Nothing short of a hearing relating to unfitness and the interests of the child, and a finding thereon is adequate support for an order changing custody. (The trial court's order changing custody was reversed.) A child's welfare is at stake, and nothing is more injurious to that welfare than to have the child shuttled between contesting parents." (Page 303.) See also Doyle v. Doyle, 309 Ill App 454, 457, 33 NE2d 507; Thomas v. Thomas, 233 Ill App 488, 492; and Smith v. Smith, 155 Ill App 14, 17.

Even more recently this court affirmed an award of child custody to a mother who had removed her children from the jurisdiction of the divorce court without the court's permission, and in defiance of a recent order of that court under which the father, and not she, had been awarded custody. People ex rel. Brown v. Walls, 38 Ill App2d 385, 187 NE2d 288.

The discretion of the trial court in child custody cases is, and should be, extremely broad, and should

not lightly be disturbed upon review. And it is appropriate that such discretion be exercised under most circumstances in favor of awarding custody to the mother. As stated in Nye v. Nye, 411 Ill 408, 414, 105 NE2d 300:

> Under our divorce statute the court is clothed with a large discretion in determining to which parent a child will be given. It is usual in such cases, due to the tender years of the child and in consideration of its best interests, to entrust its care and custody to the mother, she being a fit and proper person to rear the child. (Citing cases.) *The maternal affection is more active and better adapted to the care of the child. Especially is this true in the case of a minor daughter,* where the care and guidance of a mother's hand is doubly important. This principle has become so well fixed and followed in this State that this court has not in recent years been called to rule upon it. *Therefore, compelling evidence must be presented, proving the mother to be an unfit person, to cause the custody of her minor daughter to be denied her, or there must be a positive showing that to deny custody to the mother would be for the best interests of the child."* (Emphasis supplied.)

Considering the standards of proof which have been established by this and numerous other decisions as necessary to authorize withdrawing the custody of a little girl from her mother, it is my opinion that there is nothing in this record—either in evidence, or offered and excluded—which justifies reversing the chancellor's exercise of his discretion in denying defendant's petition for change of custody. I see nothing to be gained by a further hearing. I would, therefore, affirm the orders of the trial court.