**Charles Jenkins, Plaintiff, Respondent-Appellee, v. Jean D. Jenkins, Defendant, Petitioner-Appellant.**

Gen. No. 50,307.

First District, Fourth Division.

March 15, 1967.

David Linn, B. John Mix, Jr., and Abrams, Linn and Mix, of Chicago, for appellant.

George B. Collins, of Chicago, and Harry B. Bainbridge, of Chicago Heights, for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

Petitioner appeals from denial of her petition to modify a divorce decree so as to grant her the custody of her son.

Petitioner and Respondent were married in 1953, and were separated in January 1963 after a series of violent family quarrels, following one of which Respondent required several stitches in his head. At the time of the separation, the daughter (age three) went with Petitioner to live in her maternal grandmother's home, and the son (age eight) remained with his father, who rented another abode and leased the family house to third persons. On April 19, 1963, Petitioner received from Respondent's attorney a proposed stipulation in connection with contemplated divorce proceedings, under the terms of which the mother would retain custody of the little girl and the boy would live with the father. On June 21, 1963, the Respondent filed his complaint seeking divorce on the ground of cruelty. An appearance, answer, and

the stipulation referred to above were filed on behalf of the Petitioner. The case was heard as a default matter on June 22, 1963, and a decree of divorce was entered July 11, 1963, awarding custody of the daughter to her mother, and custody of the son to his father.

At the hearing on Petitioner's request for modification of this custody arrangement, she testified that at the time of the divorce she and Respondent had entered into an oral agreement that she would have custody of both children, notwithstanding the decree, once she got settled and was able to support and care for them. Respondent denies the existence of such an agreement. Petitioner also testified that she asked Respondent but was refused permission to live with both their children in the jointly-owned house.

In November 1963, Petitioner had left the daughter with her grandmother in Chicago and gone to Arizona to work at a resort. While there, she met her present husband, Mr. Golston, to whom she was married in January 1964. Shortly after their marriage, she took her daughter to live with them in Mr. Golston's large, modern home in Casa Grande, Arizona.

During the Christmastime immediately prior to her marriage to Mr. Golston, Petitioner had returned to Chicago for a week. She visited her son and allegedly discussed a change in his custody with Respondent. She next saw the boy when he went to spend his vacation, during the summer of 1964, with Petitioner and her second husband. It is not contested that Mr. Golston is financially more secure than Respondent, but it is admitted by both parties that economic affluence will not of itself justify modification of the custody provisions in the decree.

This petition was filed on October 24, 1964, and Petitioner alleged in the trial court, as she does here, that:

(1) the primary concern of a court in custody cases must be the welfare of the child; (2) in cases involving children of tender age, where both parents are fit, custody of the child should be granted to the mother; (3) the court has power to modify custody provisions of a divorce decree notwithstanding the fact that it had incorporated the custody arrangement set forth in a written agreement between the parties; and (4) in determining who should have custody, it is of considerable importance that children of the same parents should live together as members of one family.

Respondent contends that: (1) a change in custody is justified only after a change in circumstances of the child and there is no such change in this case; (2) the decision of the trial court as to what is best for the child should stand, since he saw and heard the witnesses at trial; (3) the rule favoring the mother in questions of custody does not apply when the mother has voluntarily given up a child; (4) the separation of brother and sister was brought about by the Petitioner and there is no rule of law requiring that the children live together, particularly where the boy has adjusted to the conditions of separation.

The trial court agreed generally with Petitioner's first two contentions and also with the argument that the decree is not permanently binding and may be modified under proper circumstances. As to petitioner's fourth argument, the court pointed out that "the ideal situation" would be for the children to live together and with both of their parents, but when this is impossible the court must seek a satisfactory alternative, and in so doing "the Court cannot accept the blanket solution that in all cases . . . it is best for a brother and sister to always be together but must be modified by circumstances in each case." The court emphasized that it felt both parties were fit parents, then held:

Now, as to the boy, the Court has to consider the fact that he has lived with the father for the last almost year and a half; that he seems to be getting along well; is being kept in a proper manner and that he has some roots which have grown with his living with his father in respect to schoolhood playmates, to the educational system, to acquaintanceships, his familiarity with his surroundings; and the Court feels that to take the chap from that situation at this time would be unwise and would result in too much trauma to the child.

· · · · · ·

I do not think that there has been a sufficient showing of a change of circumstances or a need for a return to the mother to justify saying that the welfare of the child requires this change. In fact, I think the opposite at this time would be true.

 We affirm the decision of the trial court. Because of his first-hand opportunity to observe and hear the witnesses and parties, the trial court is ordinarily in a position superior to that of this court for reaching the most equitable solution in this kind of case. We would not hesitate to disturb a lower-court finding if we were convinced that an injustice was being committed in light of the evidence, or if we found the trial court had incorrectly applied principles of law, but we find neither circumstance in this case. It must be emphasized that custody cases present among the most vexing and difficult situations facing a trial judge in the discharge of his duties. Generally, no decision a court makes in such cases can be considered either "right" or "wrong." The responsibility of a judge is, instead, to exercise his own best judgment in attempting to find the most satisfactory solution under all the circumstances in each case. The conscientious chancellor in the instant case

recognized his proper function in this regard,* and, after doing so, determined that it would be best to leave the boy with his father in familiar surroundings to which he had satisfactorily adjusted and become accustomed. We concur in that conclusion and find nothing in fact or law which would warrant our disturbing the order of the trial court.

The principal cases cited by Petitioner are either distinguishable or support Respondent's position. Nye v. Nye, 411 Ill 408, 105 NE2d 300, is cited for the proposition that custody awards should favor the mother when, as here, she is found to be a fit parent. In that case the court held that the chancellor had abused his discretion in transferring custody of child from mother to father. The mother is to be favored, the court said, when the issue is custody of a child of tender years, and to justify a modification of the original decree, there must be "compelling evidence" that custody should not remain with the mother. The factual situation in that case, however, was the converse of that in the instant case. The court noted that the husband had voluntarily accepted

---

* The following is found in the record as part of the statement made by the trial court at the conclusion of the hearing:

. . . I want all of you to know that my decision in a case like this is one of the worst burdens that I have to face as judge. When a Court makes decisions respecting money or property rights, or similar matters, of course those judgments are important; but they don't in any way approach the gravity of such a decision or ruling that I may make here. Of course, it is going to affect the lives of these children and affect the lives of the litigants here. The Court is not infallible. It doesn't have a crystal ball. In effect, it's being asked to play God to these children and to these parents: and the nearest the Court can come to making a sound judgment is to have listened to the witnesses on the stand, seen their demeanors, to have read the law submitted to me; to read other law that the Court on its own initiative thought pertinent; to have listened to the arguments of Counsel; reviewed the proceedings in the case and then tried to make some sort of concerted judgment.

the agreement embodied in the prior decree and did not later allege any misconduct by the mother of which he had been unaware at the time of the decree. The chancellor based his decision on changed circumstances, but the Supreme Court found none to have been shown to adversely affect the best interests of the child. The order for modification of custody was therefore not warranted and was reversed.

The decision in Nye is not compelling as authority for petitioner's argument here, since, as can be seen from recital of the issues involved, that decision, and the many in which it has been followed, did not declare as an immutable rule of law that a child should be awarded to its mother in every case in which she is found to be a fit parent. It held only that it is "usual" in such cases (page 414), but that "[t]he guiding star is and must be, at all times, the best interest of the child," and that a post-decree change in circumstances is required to justify a custody modification (page 415). On this last principle see, also, Mabbatt v. Mabbatt, 78 Ill App2d 455, 223 NE2d 191.

▮▮▮▮ Petitioner also cited Szczawinski v. Szczawinski, 37 Ill App2d 350, 185 NE2d 375, where this court reversed a modification order which had taken custody away from a mother who refused to honor visitation provisions in a divorce decree granting her sole custody. As in Nye, however, the Szczawinski decision was not based merely on the advantages to be found in maternal supervision of the child. That decision recognized (as do we) that child custody orders must be reviewed and modified from time to time as the unfolding circumstances may require, but held that the contumacy of the mother would not justify punishment of the child through alteration of the original decree. Since there had been no showing that the mother was unfit or that the circumstances of the child's custody had become so adversely altered as to warrant a change, the chancellor's order of modification was held to be an

abuse of discretion. We reaffirm what we said in Szczawinski at page 353:

> It is the policy of courts of review to recognize a broad discretion in a chancellor called upon to award custody of children, . . . but this policy cannot properly admit that a definite award of custody has no permanence or finality whatsoever. (Maupin v. Maupin, 339 Ill App 484, 492, 90 NE2d 234 (1950).) It has been repeatedly stated that "a decree fixing the custody of a child is final on the conditions then existing and should not be changed afterwards unless on altered conditions since the decree, or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child." Thomas v. Thomas, 233 Ill App 488, 493 (1924).
>
> . . . . . .
>
> "A child's welfare is at stake, and nothing is more injurious to that welfare than to have the child shuttled between contesting parents." (Bulandr v. Bulandr, 23 Ill App2d 299, 303, 162 NE2d 585 (1959).) This statement aptly covers the situation here.

For cases in which the change in circumstances was held sufficient to justify a change in custody, see Dunning v. Dunning, 14 Ill App2d 242, 144 NE2d 535; Frank v. Frank, 26 Ill App2d 16, 167 NE2d 577; and Mabbatt v. Mabbatt, 78 Ill App2d 455, 223 NE2d 191.

We find the trial court's decision to be amply supported by the record. In the absence of clear and convincing evidence that manifest injustice has been done, or that the trial court has abused its discretion, reviewing courts should not reject the findings and decisions of the trial courts in cases of this character because in

so doing we would merely be substituting our own personal judgments for those reached from a far better vantage point. Mabbatt v. Mabbatt, 78 Ill App2d 455, 223 NE2d 191; Wade v. Wade, 345 Ill App 170, 102 NE2d 356; Dunning v. Dunning, 14 Ill App2d 242, 144 NE2d 535; Bateman v. Bateman, 337 Ill App 7, 85 NE2d 196; Hahn v. Hahn, 69 Ill App2d 302, 216 NE2d 229.

The order of the Circuit Court is affirmed.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.