**Floraine Dokos, n/k/a Floraine Du Mez, Plaintiff-Appellant, v. Sophocles Dokos, Defendant-Appellee.**

Gen. No. 50,911.

First Judicial District.

September 20, 1967.

Rehearing denied December 27, 1967.

Albert Koretzky, of Chicago, for appellant.

Jacob Shamberg and William D. Sampson, of Chicago, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The parties were divorced in December, 1961, and custody of the minor children, Deborah now age 16, John now age 12, and Daniel now age 10, was awarded to the mother. In 1965, the mother filed her petition seeking an increase in child support payments and seeking permission from the court to continue to have her three children domiciled with her in Germany where her present husband is now employed. The defendant answered and filed a cross-petition for a change of custody or possession of the children to him on the ground that he wanted his children to be raised in the United States rather than in any foreign country. The trial court dismissed the petition for an increase in child support for want of equity and allowed the father's cross-petition for custody of the children based upon a finding that "the court having deemed it to be in the best interest and welfare of the children to have them reared and educated in the United States . . ." From this decree, the mother appeals.

Patriotism is love of one's country. Love of one's country necessarily implies a profound faith in its government and in its ideologies and a proud faith in the superior excellence of its institutions and its opportunities. We would not cryptically criticize the proud patriotism reflected in the father's desire to have his children educated in the United States nor the decree of the trial court basing a change in custody on that ground alone. Commendable as it is, it does not ipso facto supply the answer to what is for the best interest of these minor children. Praiseworthy as it is, it is not an all inclusive warranty that the children reared and educated under its beneficent influences will automatically achieve the fruition that ought to be theirs. Our own juvenile delinquency problems among all classes and all economic levels are mute, but stark evidence of this fact. It would seem, therefore, that a determination of what is for the best interest of minor children requires more. In our judgment, we must look at the home, at its influences, at its images, and at the guidance that it furnishes past, present and prospective.

The father met the second Mrs. Dokos in November preceding the divorce in December, 1961. In April, 1962, she obtained a Mexican divorce and she and the father were married on April 21, 1962. These minor children were not advised of this marriage. Deborah has never met her stepmother and the boys met her only a few days before the modifying petitions were heard in September, 1965. The father visited the children in Europe in February, 1964. The second Mrs. Dokos was not with him. He communicated with the children regularly by mail and they preceded their mother to the United States in July, 1965. The father saw them frequently subsequent to that date. He took them to the World's Fair and Washington, D. C., and had them with him on this trip for about ten days. The second Mrs. Dokos was not with them. Indeed the Chancellor himself commented

that the new Mrs. Dokos was "an uncertain entity" and only time would tell whether she would properly care for the children. She had no children either by her first or present marriage.

The plaintiff testified that she discussed her upcoming marriage to her present husband and the future of the children with the defendant in February, 1963. She advised him that her prospective husband was being sent to Germany by his employer and she guessed that it would be for from 18 months to 2 years; that she would not marry him if she couldn't take the children with her; that the defendant father said he had no intention of causing her any trouble and wished her happiness; that she did marry her present husband on April 30, 1963, and in July the children went to her in Germany; that they attended school at the Air Force Dependent School where the tuition was $465 per child; that she contemplated sending the two boys to a preparatory school in London because she felt they would receive a better education there, and wrote to the defendant about it; that she did not hear from him and did not know that he objected to it until her petition for an increase in child support was filed; that her marriage abated the $425 per month alimony which she was receiving, and that she did not intend to reside permanently outside the United States.

After conclusion of the evidence, the mother's attorney offered a proposition that the children stay in West Germany and continue their schooling at the Air Force Dependent School there, if this was the desire of the father and the court approved; that the court might determine whether the children should go to London, England, or continue their education in Germany; that the decree should provide that the father be granted the right of visitation during the summer, and that provisions be made for returning the children to this country during the summer months. In response to this, defendant's

attorney stated, "I want to make the point very clear that Mr. Dokos would not under any circumstances consider agreeing to permit the children to live any longer in Germany, whether they are going to school in Germany or going to school in England."

 Our statute provides that a court may grant leave for the removal of a child from Illinois whenever such removal "is in the best interests of such child or children" and that the custodian of such children may be required to give *reasonable* security for the return of the children when the court directs. Ill Rev Stats 1965, c 40, § 14. The mother sought the consent of the father, but not of the court to take the children with her to Germany. While we would have preferred that she had complied with the original decree of the court in this respect, her conduct here does not appear to have been contemptuous or in willful disregard of that order. Indeed she sought in her petition to have her initial action approved and her continued action authorized. The father initially consented and acquiesced for a period of 2½ years without initiating any remedial action. In any event, a change of custody is inappropriate punishment for a contempt of court, if there was one. Szczawinski v. Szczawinski, 37 Ill App2d 350, 185 NE2d 375. It is but an oft repeated truism to say that children of tender years are normally awarded to a fit mother where they may have her constant care. Miner v. Miner, 11 Ill 43, 50, cited in Nye v. Nye, 411 Ill 408, 105 NE2d 300, 303. Nothing is more injurious to the welfare of the child than to have it shuttled between contesting parents. Bulandr v. Bulandr, 23 Ill App2d 299, 162 NE2d 585. It is, of course, true that it is not necessary for the validity of an order changing custody to another parent to establish by new facts the present unfitness of the parent to whom custody has been previously entrusted "if other circumstances are clearly shown which require a modification for the welfare of the children." Kline

v. Kline, 57 Ill App2d 244, 247, 205 NE2d 775, 777. There is nothing in this record that remotely faults this mother during the years the children have been in her custody other than the mother's domicile presently in Germany. The suggestion that her desire to place the boys in an English preparatory school for awhile is evidence of her desire to get them from under foot and demonstrates her lack of solicitude for their welfare is factless fiction. She testified that she felt it would furnish them a better education than their present school. She solicited their father's advice and consent—for five months he was silent. The mother has receded from her intention to place the boys in a preparatory school; has stated that she does not intend to remain permanently in Germany; has offered to let the children remain in the school they are now attending, and is willing that provision be made for returning the children to the father during the summer months. We are not unmindful of the fact that just this arrangement has been in practical force and effect for quite some time. There isn't a scintilla of evidence that the children haven't fared well under this arrangement. Indeed the father who now complains was happy to have it so initially, and his change of heart came only when the mother sought an increase in the child support. The father did not tell his children of his second marriage; he did not introduce them to his second wife; she in no way communicated with them; the boys knew her only for a matter of days and Deborah not at all. She is a stranger to them. As justification for this action on his part, the father testified that the divorce was a traumatic experience for them, and it was for this reason that he kept his second marriage a secret. He apparently now thinks that to uproot them and bring them into a new and strange home will not likewise require a traumatic readjustment. With this, we do not agree. While the acquiescence of both parents in the present proposed arrangement over a period of several

years does not provide a straitjacket for the trial court in his obligation to make a determination as to what is for the best interest of the children, it does have some probative value and is persuasive. The experience of yesterday is the prologue for tomorrow. The father does not charge and the evidence before the trial court does not remotely suggest any insufficiency in the maternal care and training, any inadequacy in the present home of the mother or its atmosphere, any deficiency in the training now received by the children in an American school, nor any suggestion that they are not now being raised in the American Way of Life and in the American tradition. Thus, the sole basis for the change of custody in this case is the announced desire of the father that his children be raised in the United States and not in any foreign country.

■ ■ The extensive involvement of this country throughout the world, militarily, diplomatically, and industrially, is too well known to be the subject of debate. The participation of both first and second-marriage families in this way of life must be conceded. Our statute authorizing the removal of a child or children from Illinois whenever such removal is in the best interest of such child or children is not expressly nor by necessary implication limited to a removal to another state in the Union. In our judgment, the philosophy expressed in Schmidt v. Schmidt, 346 Ill App 436, 105 NE2d 117, was a judicial expression of the power of the court to remove children from the State of Illinois where their best interests require and this philosophy was then made a part of the public policy of this State by the statute which was subsequently passed. In Trimble v. Trimble, 16 Ill App 2d 408, 148 NE2d 612, this same public policy was specifically approved and the cause was remanded to the trial court to consider the question of what is for the best interest of the minor children. In other jurisdictions, this has included the removal to a foreign country.

336

Kirby v. Kirby, 126 Wash 530, 219 P 27 (and cases cited therein). From what we have already said, we necessarily conclude that under rule that the question of domicile, standing alone, is insufficient as a matter of law to warrant a change of custody, and the finding of the trial court that it was in best interest . . . based on that proposition alone is, on this record, against the manifest weight of the evidence. While we are reluctant to substitute our judgment for that of a trial court in the delicate area of child custody, the fact that the trial judge here saw and heard the witnesses is tissue paper thin to foreclose our conclusion on the record which we now examine.

Accordingly, this case is reversed and remanded to the trial court with directions to (a) reinstate the original custody provisions, and (b) reconsider the question of an increase in child support payments in the light of circumstances now existing.

Reversed and remanded.

CRAVEN, P. J. and TRAPP, J., concur.