**Wilma Louise Trtanj Jingling, Plaintiff-Appellant, v. Albert William Trtanj, Defendant-Appellee.**

**Gen. No. 67–133.**

Fifth District.

August 12, 1968.

Rehearing denied October 4, 1968.

■■■■■■■■■■■■■■■■

Dick H. Mudge, Jr., of Edwardsville, for appellant.

Lance Callis, of Granite City, for appellee.

HANNAH, J.

This case arises as an aftermath of a divorce proceeding awarding the custody of a one and one-half year-old baby girl (now six years old) to its mother, which custody the father now seeks to have transferred to him, on the sole grounds that the mother has moved to the State of Ohio.

■■■ The basic question here involved is to what extent shall a child be treated as a pawn subject to the vacillating of parents unwilling to accept the full responsibilities of parenthood. Two gardeners produced the tender roots of a promising new rose in the garden of life. Then they disagreed and separated, and now each seeks to have this tiny rose transplanted to his private garden. But science teaches that in order for this rose to reach its fullblown maturity and beauty it cannot be transplanted from garden to garden, but must be given permanency in location, accompanied with best of loving and tender care. In recognition of this principle the courts have consistently said:

> "the paramount question as to custody of children in divorce proceedings is not what the parents wish,

not who was wrong or who was right when the decree was entered dissolving the marriage, not the punishment of the father or the mother, but what is best for the child at the time the custody is fixed," Schmidt v. Schmidt, 346 Ill App 436, 105 NE2d 117.

The determining question is whether the petitioning defendant-father has established such a change in circumstances as would render it to the best interest of the child to change its custodian. A brief outline of the case history will be helpful in reaching a conclusion.

Plaintiff and defendant were married June 25, 1960, and resided together as husband and wife in Granite City. Their domestic life was not one of continued and uninterrupted matrimonial bliss. To this marriage was born, on September 12, 1962, Julie Moore Trtanj. At the time of the child's birth the parents were living separate and apart, the father living in Granite City, where he practiced dentistry, and the mother living with her parents in Carbondale. Later there was a temporary reconciliation. which terminated with the wife filing a complaint for divorce charging extreme and repeated cruelty. This was filed February 5, 1964, wherein plaintiff sought custody of the child, together with child support and alimony. The defendant filed a general denial.

Subsequently, on a petition by plaintiff for temporary custody and support, the court granted temporary custody and support to the plaintiff. The terms are not material to the issues here. On March 31, 1965, defendant filed a counterclaim for divorce upon the ground of desertion, to which plaintiff filed her denial. On June 8, 1965, an amended complaint for divorce was filed by plaintiff charging desertion instead of extreme and repeated cruelty. On June 15, 1965, sixteen months after the filing of the original complaint, the cause came on for trial. According to the docket entries it came on for trial on an amended complaint for separate main-

tenance and defendant's counterclaim. However, no complaint for separate maintenance is included in the transcript. On April 1, 1966, another amended complaint was filed which is a duplicate of that filed June 8, 1965. Evidence was heard on behalf of both plaintiff and defendant, and the case was taken under advisement.

On June 13, 1966, one year following the trial, the court entered its decree finding the equities with the plaintiff; that the defendant was guilty of wilful desertion, and that the "plaintiff is the fit and proper person to be awarded the future care, custody, education and future control of the minor child." The court further decreed certain amounts for child support and for gross alimony to be paid by defendant, and fixed visitation privileges. Defendant's counterclaim was denied.

On August 17, 1966, two months following the divorce, and approximately fourteen months following the trial, the plaintiff married Captain Robert Jingling, a career army officer. Captain Jingling was stationed in Japan from September 1966 until May 17, 1967, at which time he was transferred to Wright-Patterson Air Force Base, Dayton, Ohio.

One thing is especially noteworthy, that is that it is conceded by all parties and their attorneys that both the plaintiff and defendant were morally fit and competent persons to have the custody of the child. Likewise no criticism was directed against Captain Jingling.

While there had been some criticism on the part of the defendant that on one or two occasions the plaintiff had not strictly complied with the court's visitation orders, no serious question arose until after plaintiff moved and took the child to Ohio to live with her and her husband. Prior to going to Ohio the plaintiff had petitioned the court (May 15, 1967) for leave to take the child to Ohio, and requested the court to fix a new visitation schedule. Defendant on May 29th countered with a petition to

67

change the custody of the child to him, which he followed on June 30, 1967, with a petition for rule on plaintiff to show cause why she should not be held in contempt for removing the child from Illinois, and also petitioned to suspend payments of child support and gross alimony.

All these matters were set down for hearing on August 15, 1967. A hearing was had and on August 29, 1967 the court entered its order:

1. Modifying the decree by changing the custody of the child to the defendant with certain visitation rights to the plaintiff, and finding this to be to the best interests of the child;

2. Modifying the decree by eliminating support payments for the child.

A decree to this effect was entered September 5, 1967. Thereafter on September 7, 1967, the plaintiff gave notice of appeal and perfected it. Following the perfecting of this appeal, the defendant on October 31, 1967, filed his second petition for rule upon the plaintiff to appear and show cause why she should not be deemed in contempt of court this time for removing the child beyond the jurisdiction of Illinois. On the same day the defendant also filed his petition to suspend *all* payments, which included gross alimony payments.

On November 16, 1967, the plaintiff filed her petition for change of venue upon the alleged ground that the trial judge was prejudiced against her, charging that in the hearing on August 29, 1967, the judge had stated in his order of that date:

"With the plaintiff remarrying shortly after the decree, it is now apparent to the court that the real trouble was that during the proceedings plaintiff had already made arrangements to remarry if and when she got her divorce,"

and on or about September 19, 1967, the judge had stated in open court, in the presence of plaintiff's counsel "that

68

he would find the petitioner guilty of contempt of court *on the court's own motion* if she did not promptly return the child of the parties to the State of Illinois." (Emphasis added.) This was after the appeal from the order modifying the decree.

These motions came on for consideration on November 16, 1967, at which time the court denied the plaintiff's motion for change of venue, and without entering a rule on defendant to appear and show cause, and without a hearing being accorded the plaintiff, found the plaintiff to be in contempt of court and sentenced her to thirty days in jail and ordered mittimus to issue. At the same time the court allowed defendant's motion to suspend *all* payments, including payments upon gross alimony. From these orders plaintiff has also appealed, and the two appeals have been consolidated for hearing before this court.

■ Our first question arises with reference to the court's order changing the custody of the child from the mother to the father. When custody was first granted to the plaintiff by the court's decree of June 15, 1966, the court specifically found that defendant was guilty of wilful desertion, notwithstanding the "plaintiff has at all times conducted herself as a true, affectionate and dutiful wife." The court further found that "the plaintiff is the fit and proper person to be awarded the future care, custody, education and future control of the minor child." That finding and the decree giving custody to the mother was res judicata as to the facts which existed at the time of its entry. Nye v. Nye, 411 Ill 408, 105 NE2d 300. Our next question is, has there been any substantial change in the circumstances which render it to the best interests of the child to change its custody?

What are the changes in circumstances since the original decree? We have, so to speak, combed the record with a fine-tooth comb, and fail to find anything that reflects against the plaintiff-mother as being a fit and proper person to have the custody and care of the child. In fact

this is admitted, and it is admitted she has given the child the proper care one would expect from a mother.

We do find that the plaintiff remarried fourteen months after the divorce hearing and two months after the decree was entered. However, no one points the accusing finger toward the second husband, charging there was anything about his conduct or character that would reflect against him in relation to the welfare of the child. On the contrary, it appears he is a career officer in the air force, a man of good character, who would make a good stepfather to this child. It would appear he would lend stability to the family. As for the defendant-father, it is admitted he is a successful dentist, and a fit person to have the custody of the child. However, he is unmarried, and would have to call in relatives or babysitters to care for the child during his absence at the office and while attending conventions. By necessity he is not in a position to give the child that personal care and supervision that it receives from its mother. The importance of this care is well stated by our Supreme Court, in Nye v. Nye, supra, in this language:

> "It is usual in such cases, due to the tender years of the child and in consideration of its best interests, to entrust the care and custody to the mother, she being a fit and proper person to rear the child. (Citations.) The maternal affection is more active and better adapted to the care of the child. Especially is this true in the case of a minor daughter, where the care and guidance of a mother's hand is doubly important."

What other change in circumstance do we find? Due to her remarriage and her husband's profession, it becomes necessary for her to change her place of residence from time to time. This has now moved her from Carbondale, Illinois, to Dayton, Ohio. However, there is no evidence that there is anything about the community of Dayton

that is any more deleterious to the health and welfare of the child than that found in Carbondale or Granite City. It is true it is further removed from the defendant's residence, and does create some greater problems with reference to visitation privileges. This is the real difficulty and apparently is the only real basis for the defendant seeking this change. There is no attempt to charge the plaintiff with a failure to give the child proper care and nurture. She exhibited no desire or attempt to deprive defendant of his right of visitation. On the contrary, before moving to Ohio, she filed her petition on May 15, 1967, with the court asking the court's approval of this change, and asked the court to fix and define visitation privileges for defendant to the end that he not be derived of these rights. The defendant immediately countered with his petition to change the custody. In the meantime plaintiff's husband was transferred to Ohio. But even after plaintiff's removal to Ohio she, on September 30th, brought the child back to visit the defendant. The defendant admits that he stopped all payments, both child support and alimony in August, 1967.

The question boils down to this, was the removal of the child to Ohio grounds for revoking plaintiff's custody? We think not. It has been repeatedly held by our courts that such an act standing alone would not justify such action. We shall not review those cases, but will cite a few. Schmidt v. Schmidt, 346 Ill App 436, 105 NE2d 117; Wolfrum v. Wolfrum, 5 Ill App2d 471, 126 NE2d 34; Bulandr v. Bulandr, 23 Ill App2d 299, 162 NE2d 585; Jayroe v. Jayroe, 58 Ill App2d 79, 206 NE2d 266. In Dokos v. Dokos, 88 Ill App2d 330, 232 NE2d 508 we find a case almost parallel on facts, and the language there used is most apropos to this case.

As previously stated, *subsequent* to filing the notice of appeal the defendant, on October 31st, filed two petitions, one seeking to suspend all money payments, and one for

a rule on plaintiff to show cause why she should not be deemed in contempt of court for taking the child out of the State of Illinois. These were set for hearing on November 16, 1967, on which day the plaintiff filed the motion for change of venue.

■ No rule was entered on plaintiff to appear and show cause, and without such a rule or hearing the court proceeded to find the plaintiff in contempt and sentenced her to thirty days in jail and ordered mittimus to issue. Inasmuch as plaintiff was then beyond the jurisdiction of the court, the mittimus was not executed. This alleged contempt was not a direct contempt, and plaintiff was entitled to a hearing thereon. She was deprived of due process and the order exceeded the power of the court. Furthermore the very matter basic to the determination of the question of contempt was then pending on appeal to the Appellate Court.

■ On the same occasion the court denied plaintiff's motion for change of venue. It is argued that the motion was not filed in apt time. The question of aptness in time must be measured in the light of the time the alleged prejudice was discovered. From the time of taking the appeal on September 7, the cause was dormant, so far as the trial court was concerned. It was not again before the trial court for further consideration until the filing of defendant's petition on October 31st. We believe the motion was made in apt time. Without any extended comment, it occurs to the court that these statements, made by the trial court, after the notice of appeal, constituted a justified basis for a request for change of venue for future proceedings, and that such prayer should have been granted.

Accordingly, it is the judgment of the court that the decree modifying the original decree should be reversed and set aside in its entirety and the original custody, child support payments and gross alimony payments rein-

stated. It is further ordered that the defendant pay all arrearages within thirty days.

It is further ordered that the defendant shall have the custody of the minor child, Julie Moore Trtanj, from December 27th to January 2nd of each year, and for one month during the summer vacation at his home in Granite City, Illinois, the time to be agreed upon by the parties, plaintiff to deliver the child to the defendant and defendant to return the child to the plaintiff. Defendant shall also have the right of visitation to the child one weekend once each month, upon giving plaintiff not less than one week's notice of his intent and the time of such visit. Such visitation rights shall continue until changed by an appropriate order of the Circuit Court after due notice to the parties and a hearing thereon.

It is the further order of the Court that the order finding the plaintiff in contempt of court be set aside and vacated, and that the petition of plaintiff for change of venue be allowed as to all future proceedings had herein.

Cause remanded with instructions to enter an order consistent with the views expressed in this opinion.

Judgment reversed and remanded with directions.

EBERSPACHER and GOLDENHERSH, JJ., concur.