ELKE RADIVOJEVIC, Plaintiff-Appellee, *v.* BRATISLAV RADIVOJEVIC, Defendant-Appellant.

(No. 11794;

Fourth District—April 18, 1973.

Herbert Semmel, of Champaign, (Carter H. Klein and Edward M. Rothschild, Senior Law Students, of counsel,) for appellant.

John J. Lawless, of Champaign, (Stan Eisenhammer, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal by the defendant father from an order of the circuit court of Champaign County refusing to change the custody order from the mother to the father when the mother returned to West Germany to live permanently after the divorce decree. The child was born in the United States and was four years and two months old at the time of the order we consider. The basic issue is whether the best interests of this child require her ex-patriation with her mother in Germany for a period of 11 months and her return to the United States for one month in the summer, or whether her custody should be changed to the father so that she may be reared here in the country of her birth. In its decree the trial court found that the mother had sufficient financial resources and is otherwise able to care for said child and that each of the parties is a fit person to have custody; that it is in the best interests of the child that she remain in the custody of her mother in West Germany and authorized the mother to remove said child to that country; that the father be permitted visitation with the child for a period of one month each year between the months of June and September, the precise time to be agreed upon; that the transportation expense of the child by air would be supplied out of child support payments; that those payments should be paid by the father to the clerk of the circuit court and there sequestered until the further order of the court; that upon application the court would order a reasonable amount to be expended on behalf of the child for transportation to the United States and return, and the balance would be sent annually to the mother.

The parties were divorced in February, 1969. The plaintiff was a native of Germany, defendant was a native of Yugoslavia, and the minor child, Suzanne, was near two years of age. Custody was awarded to the mother and provided that neither party should remove the child from the State of Illinois. In October, the mother petitioned the court for leave to take the child to Germany because of the illness of her mother, and an order was entered granting such permission and directing the return of the child by February 1, 1970. The mother posted a bond to ensure performance. In May of 1970, a supplemental order was entered indicating that the child had not been returned to the court as directed, that the mother be ordered to deliver the child in open court within 60 days, and

upon failure to do so appointed the father as temporary custodian for the purpose of returning said child to the court. The father was required to post a $1000 bond with the clerk of the court. The mother was found to be in contempt of court. The father went to Germany and required the aid of the German courts to obtain visitation, returned the child to the United States and petitioned the court to award custody to the father. The order denying a change of custody and modifying the divorce decree as hereinabove indicated was entered in October, 1971 and this appeal followed.

The father is now a naturalized citizen and a doctor of veterinary medicine. The mother is a medical technician. The court found both to be fit and proper persons to have the care, custody and education of said child. The record indicates that pending the divorce decree the father took the child and secreted her from the mother and a court order was required to get her back. The record also shows that there was or may have been some disturbance when the father sought to visit the child in Germany, and that the German court enforced the Illinois decree, but declined jurisdiction to alter custody. This record supports the proposition that both parents have apparently used the child and its custody as a pawn—an attitude that cannot be condoned nor should it be rewarded. Both parties indicated they expected to marry within a few months after the hearing. The mother made it clear that she intended to remain in Germany. It is abundantly clear from this record that any order entered by the circuit court would deprive one parent of frequent visitation and that it is not unreasonable for either one or the other to have the custody during the school year and the other having visitation rights in his or her own home for one month or upwards during the summer. There is simply no way that both parents can have like or equal rights of visitation at present.

■■ The trial court's determination was that it is for the best interests of this child that she remain with the mother subject to visitation by the father in his home in the United States. The standard applied by the trial court is proper. Illinois has long been an advocate of the "tender years" doctrine. (*Miner v. Miner*, 11 Ill. 43; *Draper v. Draper*, 68 Ill. 17; *Nye v. Nye*, 411 Ill. 408, 105 N.E.2d 300; *Carlson v. Carlson*, 80 Ill.App.2d 251, 225 N.E.2d 130; *People ex rel. Bukovich v. Bukovich*, 39 Ill.2d 76, 233 N.E.2d 382.) The last cited case does not preclude the propriety of awarding custody to a father under some circumstances and reiterates that a custody decree is always regarded as temporary rather than permanent. Those circumstances are not present here.

■■ The father here urges that it is the natural right of the minor child and for its best interests that she be educated in the United States.

In *Dokos v. Dokos*, 88 Ill.App.2d 330, 232 N.E.2d 508, this court commented upon this position alone as a basis for change of custody and what is said there need not be repeated here. The mother was found in contempt of court for failure to return her child to the Champaign County court. This finding was in absentia and it standing alone is not sufficient to warrant a change of custody. *Jingling v. Trtanj*, 99 Ill.App.2d 64, 241 N.E.2d 39.

It is idle for this court to presently compare the educational systems of this country and of West Germany in history, art, science, mathematics and other fields. Both countries have produced men and women of world-wide renown and talent over the years. Superiority of one over the other daily or annually is nebulous. It is idle to suggest that this child raised in West Germany will be ill-prepared to return to her native country and meet its challenges. Those born in other countries who have come to our shores and have been leaders in many fields in America repudiate the soundness of such a doctrine. We therefore conclude that the trial court did not abuse its discretion in the order entered in this cause and that it has taken the steps deemed most appropriate to protect the sanctity of its decree.

■■ The father likewise suggests that this court should direct that the German court adopt the provisions of the Illinois decree. We have already observed that the German court did enforce the provisions of the Illinois decree. We had occasion to observe in *Hager v. Hager*, 1 Ill.App.3d 1047, 274 N.E.2d 157, that in the absence of a treaty defining the effect to be given a decree rendered by another country its recognition is founded largely upon a somewhat nebulous doctrine of comity. As this court did in *Hager*, so the German court did in this case —it took the position that it was without power to alter the provisions of the Illinois decree. It did enforce it. A proper respect by each party for the court's decree and a proper concern for the child should end litigation.

■■ Under the circumstances here stated, this court cannot say that the trial court abused its discretion or that the decree is contrary to the manifest weight of the evidence. (*Spencer v. Spencer*, 132 Ill.App.2d 740, 270 N.E.2d 72.) Neither can this court say as a matter of law that the education of Suzanne in the United States is *per se* in her best interests nor outweighs the "tender years" doctrine which for more than a century has been a part of our jurisprudence.

Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

CRAVEN, P. J., and TRAPP, J., concur.