PATRICIA KMINEK, Petitioner-Appellant, *v.* FRANK J. KMINEK, Respondent-Appellee.

(No. 59482;

First District (4th Division)—March 12, 1975.

Edward L. Osowski, of Chicago, for appellant.

Shriman & Feldman, of Chicago (Harry Shriman, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This is an appeal from post-decree proceedings. The parties were divorced on November 5, 1969, in a decree which awarded custody of their three minor children to the petitioner. On June 7, 1971, an agreed order was entered which changed the custody of the children to the respondent, Frank J. Kminek. The petitioner instituted proceedings on November 13, 1972, to set aside the agreed order and regain custody of the children. After a hearing before the Honorable Robert C. Buckley, the petition for change of custody was denied. We affirm.

Two issues are dispositive of this appeal: (1) Whether the agreed order, entered on June 7, 1971, was valid; and (2) whether there was sufficient evidence in the record to support the court's order, entered on May 7, 1973, that the children remain with their father.

Three children were born to the parties herein: Frank, now age 9; Christiana, now age 7; and Christopher, now age 7. According to the petitioner's testimony at the hearing on her petition to vacate the agreed order, she and the three children resided at her parents' home, along with her father, mother, and two brothers, for approximately 2 years after the divorce decree was entered. Petitioner did not work during this period and received weekly payments of $75 from the respondent for the support of herself and the children.

In May or June of 1971, petitioner discovered that she was pregnant by another man. Petitioner stated that she was confused and did not know what to do regarding the care of her three children. The petitioner did not feel she could continue to care for them because she and her husband-to-be had no money and planned to move into a one-room apartment where young children were not permitted. She did not want to leave the children with her parents because her father drank a lot, they fought constantly, and she was afraid he would attempt to prevent her from seeing the children if she left them at his house. Consequently, she told the respondent that she was pregnant, did not know what to do, and

asked him to take the children until she and her husband-to-be could get married and on their feet. After some delay, according to the petitioner, respondent agreed to take the children but only if petitioner would "make it legal" as he was also planning to get married and did not want his future wife to become a babysitter. At the hearing, petitioner testified that she thought "making it legal" meant legally taking the children until she could take them back to live with her and her husband-to-be.

Several weeks later, petitioner and respondent met at the office of Mr. Herman Feldman, respondent's attorney, to discuss the custody arrangements. According to the petitioner, she asked the attorney to put a specific time limit in the change of custody agreement but was told that that would not be possible. Petitioner stated that the attorney asked her, in private, whether anyone was "pushing her" to change the custody of the children, and she replied "no." Before departing, the parties agreed that petitioner would think it over and that, if she decided to relinquish custody, she would let the attorney know so that the necessary papers could be prepared.

Respondent telephoned the attorney several weeks thereafter and asked him to prepare the papers necessary to change custody of the children. The attorney sent an order to the respondent wherein the parties agreed that the court enter an order granting custody of their three minor children to the respondent with all reasonable rights of visitation to the petitioner. Respondent obtained petitioner's written approval on the order, and it was entered on June 7, 1971.

The children continued to live with the petitioner until July 3, 1971, when she married Dennis Grammas, the father of her unborn child. Mr. Grammas was unemployed at the time of the marriage. The couple had very little money, so they moved into a one-bedroom apartment. In September 1971, Mr. Grammas inherited some money from his grandmother. With these funds, the couple purchased a two-bedroom house. They moved into their new home on October 31, 1971.

Shortly thereafter, petitioner began seeking to regain custody of the three children from the respondent. The respondent's initial response, according to the petitioner, was that they would talk about it at another time. Finally, in September of 1972, the respondent told her he would not consent to the return of the children. Petitioner instituted the instant proceedings in November 1972 in a petition which asked that the agreed order of June 7, 1971, providing that the respondent have custody of the children, be vacated and custody of the children reinstated in petitioner.

Mr. Herman Feldman testified on behalf of the respondent over petitioner's objections. Mr. Feldman stated that he never represented petitioner and that he is the attorney who represented the respondent in the

original divorce. According to Mr. Feldman, the respondent telephoned him in April or May of 1971 and stated that his former wife wanted to give up the children. During an interview with the parties, Mr. Feldman stated that he advised petitioner she would be giving up the children permanently once she signed and could only get them back if respondent consented. Mr. Feldman testified that he advised petitioner to go home, think about it, and talk to a lawyer. After receiving a telephone call from the respondent, Mr. Feldman prepared an order changing custody of the children to him. Respondent returned the order with the written approval of both parties to Mr. Feldman, who presented it to the court where it was subsequently entered.

The respondent, Frank J. Kminek, testified on his own behalf as follows: Around April 1, 1971, petitioner first approached him concerning the children. He told her he would take them only if he could do it "legally" as he was about to get married and did not want his new wife to become a babysitter. Petitioner responded that she was pregnant and did not know what to do. Respondent again told her he would only take the children legally, and that they could talk to his attorney if she wanted to discuss it with someone. About 3 weeks after the conference in Mr. Feldman's office, according to the respondent, petitioner informed him that she had decided to relinquish custody. Respondent called the attorney and asked him to prepare the necessary papers. There is a discrepancy as to the time and place of the signing of the order: according to the petitioner, she signed the order at the attorney's office during her initial interview; according to the respondent and Mr. Feldman, the order was drafted some 3 weeks after the interview in Mr. Feldman's office, then mailed to the respondent who obtained petitioner's signature. The respondent testified that petitioner signed the order at her mother's home. The petitioner does not deny that the signature which appears on the order is, in fact, hers.

Both parties presented evidence as to the condition of the children in their present environment, and that testimony was conflicting. According to the petitioner, the children are dirty, unsupervised, without haircuts, and their clothing is in poor condition. On cross-examination, however, petitioner admitted that the children are doing very well in school and that the respondent and his present wife were good to them. Irene Higgins, petitioner's mother, gave an account of the children's condition that was substantially the same as that of the petitioner. Dennis Grammas, petitioner's husband, stated that they are unhappy and sometimes cry when being returned to the respondent after visiting with petitioner.

Respondent's witnesses testified that the children's present condition was good. Allen Hopkins, principal of the school currently attended by

the children, stated that the present Mrs. Kminek was very cooperative with the teachers and supportive of the children. According to Mr. Hopkins, the children are good students. Respondent testified that the children are active in various activities, receive adequate medical care, and his present wife is a good mother to them. Marion Kminek, respondent's present wife, stated that the children were home alone for brief periods of time on a few occasions due to unforeseen circumstances. However, they have not been left alone since petitioner complained about their lack of supervision. The witness further stated that the children have many friends in their present neighborhood and are involved in many activities, such as Cub Scouting for the boys and dancing lessons for the girl.

At the conclusion of the hearing, the court found that it had jurisdiction, that there was no requirement of notice as to the entry of the agreed order, and that the agreed order was the free and voluntary act of the parties. The court further found that the children are being adequately cared for and that their best interests dictate that they remain in their present environment because it would be an unfair and improvident act to uproot them and change custody again. The court then denied the petition to vacate the agreed order and reinstate custody in the petitioner.

In this appeal, petitioner argues that the agreed order, entered on June 7, 1971, was not valid and binding. She contends that the entry of that order violated her right to procedural due process because she received no notice of its presentation to the court. Further, petitioner argues that it was reversible error for the court to allow the attorney who prepared the agreed order to testify at the hearing over her objections.

The order at issue here is entitled, "Order Amending Decree for Divorce." It provides that the custody of the three minor children of the parties shall be vested in the respondent and that the petitioner shall have all reasonable rights of visitation. The signatures of both the petitioner and the respondent appear on the face of the order below the notation, "Approved."

■■ We agree with the trial court's finding that the order was the voluntary act of the parties. It is a well-established principle of law that agreements between parties relating to the custody, support and welfare of children are presumed to have been voluntarily entered. This principle was acknowledged by our supreme court over 100 years ago in *Buck v. Buck* (1871), 60 Ill. 241, where the trial court, in granting the decree of divorce, based its order upon the terms of an agreement entered into by

the parties regarding alimony and child support. In refusing to reverse, the supreme court stated, at page 242:

> "It sufficiently appears from the recitals in the decree, that the whole question of alimony was fixed and settled by the agreement of the parties, not only the amount of money and articles of personal property allowed to the defendant in error, but also the provision made for the support and maintenance of their adopted daughter. Having consented to these provisions of the decree, the plaintiff in error can have no relief against the force of his own voluntary agreement.
>
> Whether the alimony is too high, or whether the court had any lawful authority to make provision for the maintenance of the adopted daughter without the consent of the plaintiff in error, it is not now necessary for us to express an opinion. It was competent for the plaintiff in error to consent to such a decree, and having done so, it must remain forever binding on him."

■■ Recent authorities have expressed the view that child-custody agreements between parties to a divorce do not deprive the court of its jurisdiction to determine questions regarding the welfare of children (*Richton v. Richton* (1963), 45 Ill.App.2d 128, 195 N.E.2d 265) and do not provide a "straitjacket" for the court in its obligation to make a determination as to what is for the best interests of the children. (*Dokos v. Dokos* (1967), 88 Ill.App.2d 330, 232 N.E.2d 508.) Nevertheless, the terms of an agreement between parents with respect to the maintenance and care of minor children will be given effect when consistent with the welfare of the children. (*Novak v. Novak* (1956), 10 Ill.App.2d 342, 134 N.E.2d 646.) Such an agreement has probative value and is persuasive in determining the best interests of the children. *Dokos v. Dokos* (1967), 88 Ill.App.2d 330, 232 N.E.2d 508.

■■ In this case, the order of June 7, 1971, indicates on its face the agreement of the petitioner and respondent that the court enter an order granting custody of their minor children to the respondent. Moreover, petitioner herself testified at the subsequent hearing that she was in fact unable to care for the children at the time the order was entered. At that time she was pregnant and about to be married. She and her husband-to-be were planning to move into a small apartment where young children were not permitted to live. She was afraid of leaving the children with her parents because of their poor relationship. In our opinion, this testimony supports the conclusion that the terms contained in the order, providing that custody of the children be granted to the respondent, was in the best interests of the children.

. Petitioner argues that she did not intend her surrender of the children to be permanent. Both parties testified that respondent agreed to accept custody only if it were made "legal," but there is conflicting testimony as to their respective interpretations of this restriction. After reviewing the entire record, however, we are of the opinion that petitioner was aware of the consequences of her actions at the time she signed the agreed order. The petitioner admits that she was advised that no time limit could be placed on granting custody of the respondent. Moreover, petitioner did not know at the time of her marriage that her present husband would receive an inheritance that would enable them to purchase a home large enough to accommodate the children.

Petitioner further contends that it was error for the court to enter the agreed order without notice and a full inquiry as to whether its terms were in the best interests of the children. We disagree. There was no factual dispute to be heard with respect to the entry of the order because the parties had already agreed to its terms. Petitioner raised the question of notice for the first time in this proceeding. Had she requested a hearing before the order was entered and been refused, or had the court in ruling on the petition to vacate chose to stand on the agreed order without a hearing, she might have reason to argue that she was unfairly denied a hearing. However, the record indicates that both parties were afforded every opportunity to present evidence bearing upon the custody issue. After a full and exhaustive hearing, the petition to alter the terms of the agreed order was denied.

Petitioner cites no authority in which an agreed order for custody was set aside due to the court's failure to give notice and hold a formal hearing on the provisions set forth therein. Among the numerous cases cited by petitioner is *Bulandr v. Bulandr* (1959), 23 Ill.App.2d 299, 162 N.E.2d 585, where the court simply held that the requirement of a hearing was met where the parties were present and testified and plaintiff was represented by counsel. Here, as in *Bulandr*, petitioner did indeed have her day in court.

In *Gerst v. Gerst* (1953), 349 Ill.App. 201, 110 N.E.2d 470, cited by petitioner, the court held that it was reversible error in a proceeding for change of custody for the court to decline to hear witnesses tendered by the father on the issue of custody. Petitioner can claim no such failure by the court in this case, for both parties testified and were permitted to present every circumstance they desired relative to the disposition of the custody issue.

In *Smith v. Smith* (1962), 36 Ill.App.2d 55, 183 N.E.2d 559, also cited by petitioner on the question of the failure of notice, the trial court granted a motion by a divorced husband regarding visitation rights.

There was a conflict as to whether evidence was heard prior to granting the motion: the defendant asserted that the court granted the motion without hearing evidence, and plaintiff asserted that both parents testified. The order made no findings of fact and said nothing about evidence being heard but recited that the court was "fully advised in the premises." There was no report of proceedings, no agreed statement of facts, and no certification as to what took place at the time the order was entered. The appellate court affirmed, stating that it would conclude that the court heard adequate evidence in the absence of a contrary indication in the order or the record. We think the facts in the instant case are distinguishable, for here there was an agreement between the parties that the court enter an order granting custody to the respondent.

In summary, the record in this case indicates that, at the time the agreement was signed and the order entered by the court, there was no factual dispute between the parties as to what custody arrangements were in the children's best interests. They both agreed that the father could best take care of the children in view of the inability of the petitioner to do so. Having agreed upon the disposition of the custody issue in the order, we agree with the trial court's holding that there was no requirement as to notice.

In view of the foregoing, we hold that petitioner failed to overcome the presumption of validity attaching to the agreed order and that no notice was required prior to its entry. We further hold that the agreed order, along with petitioner's testimony at the hearing, was persuasive as to what was in the best interests of the children at the time the agreed order was entered. Therefore, we find no error in the trial court's denial of the petition to vacate the agreed order.

Petitioner argues that the court should not have allowed the attorney who prepared the order to testify over objections. We do not consider it necessary to discuss this question, since we believe that petitioner's testimony alone was sufficient to support the court's refusal to set aside the agreed order.

■■ We further find that there was sufficient evidence in the record to support the court's order that the children were to remain in the custody of the respondent. Petitioner argues that there was sufficient evidence to require the return of the children to her custody, relying principally on the oft-stated principle that the interests of children of tender years are best served if their custody is entrusted to their mother. We note, however, that while Illinois is an advocate of the "tender years" doctrine, this does not preclude the propriety of awarding custody of children to their father under some circumstances. *Radivojevic v. Radivojevic* (1973), 11 Ill.App.3d 116, 295 N.E.2d 570.

In matters involving the custody of children, the paramount consideration is their welfare. (*Miezio v. Miezio* (1955), 6 Ill.2d 469, 129 N.E.2d 20; *Eggemeyer v. Eggemeyer* (1967), 86 Ill.App.2d 224, 229 N.E.2d 144.) The court exercises broad judicial discretion (*Fears v. Fears* (1972), 5 Ill.App.3d 610, 283 N.E.2d 709; *Mikrut v. Mikrut* (1969), 113 Ill.App.2d 446, 251 N.E.2d 84; *Marcus v. Marcus* (1969), 109 Ill.App.2d 423, 248 N.E.2d 800). The determination of the trial judge with respect to custody matters will not be disturbed on review unless it appears that a manifest injustice has been done (*Hopwood v. Hopwood* (1970), 122 Ill.App.2d 484, 258 N.E.2d 833; *Hahn v. Hahn* (1966), 69 Ill.App.2d 302, 216 N.E.2d 229) or it is clearly against the manifest weight of the evidence. *Dent v. Dent* (1967), 83 Ill.App.2d 394, 227 N.E.2d 787; *Wade v. Wade* (1951), 345 Ill.App. 170, 102 N.E.2d 356.

The court specifically found that the best interests of the children dictates that they remain in their present environment on the basis of the following facts. The children have been with the respondent and his present wife since the middle of 1971. He is married and provides a good home for them. Petitioner herself describes respondent as a good father and states that his present wife is good to the children. The principal of the school attended by the children stated that they are doing fine in school and described the present Mrs. Kminek as cooperative in working with the teachers concerning the children. The children have made many friends in their present neighborhood and are involved in many activities.

■■ Stability of environment is an important factor in determining the best interests and welfare of children. (*Cave v. Cave* (1971), 2 Ill.App.3d 782, 276 N.E.2d 793; *Spencer v. Spencer* (1971), 132 Ill.App.2d 740, 270 N.E.2d 72.) Where the welfare of children is at stake, care must be taken so that their best interests are not impaired by being shuttled between contesting parents. (*Collings v. Collings* (1970), 120 Ill.App.2d 125, 256 N.E.2d 108; *Jenkins v. Jenkins* (1967), 81 Ill.App.2d 67, 225 N.E.2d 698.) In this case, the record indicates that the children are making a good adjustment to their present environment. The court specifically found that it would be an unfair and improvident act to uproot them and change them back. We cannot agree with the petitioner's contention that this finding was against the manifest weight of the evidence. In view of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.