In the Matter of the Custody of the Minor
**MARLENE TORRES LOUBRIEL**
Civil No. 859-860-1967
Municipal Court of the Virgin Islands
Div. of St. Croix
Christiansted Jurisdiction
October 20, 1967

RONALD H. TONKIN, ESQ., Christiansted, St. Croix, Virgin Islands, and JORGE LUIS ORTIZ VIERA, ESQ., San Juan, Puerto Rico (specially admitted as co-counsel), *for petitioner*

DUDLEY, BROWN & BRYANT (BRITAIN H. BRYANT, ESQ.), Christiansted, St. Croix, Virgin Islands, *for respondent*

JOSEPH, *Judge*

OPINION

This case came on for hearing on a writ of habeas corpus filed on behalf of petitioner Elba Loubriel by the assistant attorney-general for the custody of the minor, Marlene Torres Loubriel. Subsequently the assistant attorney-general withdrew his appearance and petitioner proceeded with private counsel. The writ was directed to Vernon Perkins and Margot Perkins commanding them to have the said minor child in court at 4:00 p.m. on October 10, 1967, the writ having been issued earlier that day. The writ and the petition seeking it were not served on Margot Torres Perkins. Vernon Perkins appeared at the appointed time and advised the court through his attorney that he did not know the whereabouts of his wife, Margot Perkins, or of the child, as his wife had absented herself from their home, taking the child with her. A petition was thereafter filed seeking Mr. Perkins' citation for contempt of court. A hearing on the order to show cause issued pursuant to said petition on October 13, 1967, resulted in a dismissal

of the contempt petition, the court finding that there was no evidence before the court to support a conclusion that Mr. Perkins was able to produce the child or had willfully failed to do so.

Thereafter the father of the child, Ramon Torres, voluntarily appeared and sought an adjudication in the habeas corpus case of the child's custody. Mr. Torres had the child with him at the hearing held on October 20, 1967.

■ ■ The court took cognizance of this matter pursuant to 4 V.I.C. § 172(3), which gives to the Municipal Court, Juvenile and Domestic Relations Branch, jurisdiction to hear and determine matters of custody of children under the age of 18 years living within the Virgin Islands. The authority for the issuance of the writ of habeas corpus is contained in 4 V.I.C. § 77, which confers upon the Municipal Court jurisdiction to issue writs in aid of its jurisdiction.

Petitioner Elba Loubriel, Vernon Perkins and Ramon Torres, all being represented by counsel, have waived any procedural defects which may exist as to the verification of the petition and the return of service.

The facts developed at the hearing from the testimony of petitioner Elba Loubriel and her husband, Ramon Torres, parents of Marlene, are as follows. Elba Loubriel and Ramon Torres were married on January 9, 1960. Their only child, whose custody is here in issue, Marlene Torres Loubriel, was born August 3, 1961 in New York where her parents resided. At the time of the marriage and continuously since then Mr. Torres was employed by the United States Navy in oceanographic research. His duties require that he be at sea for periods of time ranging from ten days to a month and a half, with the time between voyages while his ship is in port being spent at the home he had provided for his wife, himself and the child in the Bronx in New York, New York. He estimated that he spent from

544

four to five months at home each year with the balance of time at sea. He is now earning $750 per month from his employment.

From the time that the child, Marlene, was an infant the mother, petitioner, has delegated her care and physical custody to others for the major part of the time. Although the father, Ramon Torres, was able to and did provide a home for her and the child, she was "too busy" to care for the child herself and left her in the home of a "godmother" for periods of time as long as six months, or more. She also left the child in the care of her sisters in New York and New Jersey for substantial periods of time when she traveled to Puerto Rico, the home of her parents where she now resides. She sometimes left the child in New York with others and, if she took her to Puerto Rico, she left her with relatives there while making visits to St. Croix where her husband's family resides. On many occasions upon returning from duty at sea the father had great difficulty locating both petitioner and the child, as he found that neither of them were occupying the apartment.

In February or March of 1967 petitioner left the home which she shared with her husband in New York and moved with the child to Puerto Rico where they occupied one bedroom in a three bedroom apartment over a bar or bar and restaurant operated by petitioner's sister. The other persons living in the apartment are her father who is 72 years old and paralyzed, her mother who is 69 and in poor health and her niece. Her sister, who lives downstairs with her three young sons in a two room apartment, does most of the cooking for the family upstairs and looks after Marlene while petitioner works. Petitioner is employed as a beautician.

In the latter part of September, 1967, petitioner's sister enrolled the child in school. Shortly thereafter, on September 28th the father Ramon Torres, went to Puerto Rico to

545

see the child. He had not heard from his wife as to the child's welfare since the separation, but had gone to Puerto Rico to see her and Marlene on at least one occasion during that time. On one such visit he had asked and was refused permission to take the child with him for a week's visit with his relatives in St. Croix. Petitioner, on other occasions both in New York and in Puerto Rico, had thwarted the father's efforts to visit the child.

After his arrival Ramon Torres went to the home of petitioner's parents and found neither his wife nor the child there. He later located the child at the home of his wife's sister who lived some distance away and learned that his wife was in New York. When he arrived at this home on September 29, 1967, at 8:45 a.m. he found his daughter poorly dressed in clothes which were both torn or ragged and dirty. She had mosquito bites on her legs and had not had breakfast although her aunt was preparing to take her to pick up beer for her business. After telling his sister-in-law that he had been advised that he was legally within his rights to do so, he took Marlene to the airport where he bought her some new clothes and then took her by plane to St. Croix. In St. Croix he made arrangements with his sister and brother-in-law, Margot and Vernon Perkins, to take care of the child in their home when he returned to his work with the Navy. On September 30, 1967, he executed two documents which he left with Mr. Perkins, the first being a power of attorney to Mr. and Mrs. Perkins to act as legal guardian for the child in the event any emergency should occur to the child during the father's absence. The second was an affidavit to the effect that he had placed Marlene with them and that they should not release the child without his or his attorney's consent. He also arranged for the enrollment of the child in a small private school and paid her tuition.

Mr. Perkins' testimony at the contempt proceeding filed herein and not disputed is that he is a plumbing contractor who has lived on St. Croix for a number of years, that he and Margot Perkins have been married for approximately three months and are expecting the birth of a child. He at that time, and the father at the custody hearing, testified that his home is a good home for Marlene. With them Marlene is living in a house where she has her own private bedroom and shares the house only with Mr. and Mrs. Perkins. The father also testified that the child is now healthy, well adjusted and happy with her aunt and uncle and that she is doing well in school. He stressed the fact that, for the first time in her life, she has the opportunity of living in a stable environment. None of this testimony is disputed by petitioner, whose only objection to the child's staying with Mr. and Mrs. Perkins is that they are "strangers" to Marlene (not, apparently using this word in the legal sense as strangers to the marriage), whereas Marlene knows the mother's relatives in Puerto Rico much better and that she wants the child to be with her and her family.

Petitioner's testimony on this point, as well as on a number of others, is contradictory. On the one hand she referred to Mr. and Mrs. Perkins as strangers to Marlene, while admitting on the other hand that Marlene had known Mrs. Perkins when she was living in New York prior to her marriage. She has denied being in New York between February and September, 1967, but admitted leaving Marlene with her sister in New Jersey when she was there in March, 1967. Mr. Torres' testimony, in contrast, was direct and consistent. While petitioner's testimony frequently appeared to be evasive, Mr. Torres' testimony was forthright and given without hesitation. For this reason any conflict in the testimony of these principals is resolved in favor of Mr. Torres.

■ Petitioner has shown, in the institution of these proceedings the natural concern of a mother to have custody of her child. A similar concern has been shown by the father whose actions in bringing the child to St. Croix were motivated by his concern that her environment under the direction of petitioner was injurious to her welfare. The motives and desires of the parents are not, however, paramount. The court's basic concern in awarding custody is the welfare of the child. Nelson on Divorce, § 15.02, Vol. 2, p. 214; Bray v. Bray, Md., 170 A.2d 500, 504; Schwartz v. Schwartz, N.J., 172 A.2d 97, 102; Johnson v. Johnson, Pa., 171 A.2d 627, 629; Washburn v. Washburn, Cal., 122 P.2d 96, 100.

The father has testified that in 2 1/2 years he will have had 20 years service with the Navy and will then be eligible to retire, which he plans to do. He asks the court that he be given custody of Marlene with the stipulation that she will reside with Vernon and Margot Perkins until his retirement from the Navy at which time he will make a home for her with him. Of the two alternatives proposed for the child the father's solution seems to be highly preferable. With Mr. and Mrs. Perkins she will live in a private house where she will be cared for as their child, have a bedroom to herself and attend a good private school. The home proposed by the mother is a crowded apartment over a bar where she would be living with aged and infirm grandparents to be cared for by a working mother and aunt, and judging by past performances, moved about by her mother from relative to relative as it suits her convenience.

■ The court is not unmindful of the fact that economic advantages of one home as opposed to another are only of minor significance in determining what is best for the child, and the fact that a mother must or chooses to seek

employment outside of the home will not in itself justify denying custody to her. The father can, of course, be ordered to pay sufficient sums for the support of the child, within his means, to equalize the economic factor. This is not the situation here, however. Although petitioner testified that Mr. Torres paid her the sum of $150 per month for Marlene's support, she has not attempted to obtain a separate home for herself and the child, nor has she sought additional funds for this purpose. In fact, when she had a home for herself and Marlene she did not make a home for the child with her, but left her about with various friends and relatives. Accordingly even a generous award of support would not, in this situation, assure a stable home for the child with her mother.

On the basis of the weight of the evidence before the court the child is being well cared for and is thriving on the advantages offered to her by Mr. and Mrs. Perkins and her father. The disadvantages of change in a child's home have been thoroughly discussed in a number of cases including Fine v. Denny, Cal., 244 P.2d 983, 984; Lawrence v. Lawrence, Cal., 332 P.2d 305, 308: Winter v. Crowley, Md., 190 A.2d 87, 91. See also the case of Commonwealth v. Anderson, Pa., 206 A.2d 335, wherein the court awarded custody of the children of a man in military service to his parents upon finding among other things that the home of the grandparents was in a better neighborhood, the accommodations were more spacious than that of the childrens' mother, and that the father would be able to spend his time on leave with the children.

For the reasons stated the court feels compelled in the child's interests to award her custody to her father, Ramon Torres, in whose custody she is to reside with her aunt and uncle, Margot and Vernon Perkins, in St. Croix, Virgin Islands, subject to the further order of this court,

petitioner Elba Loubriel to have reasonable rights of visitation with the said child, Marlene Torres Loubriel provided that the said child shall not be removed from St. Croix without prior order of the court permitting such removal.