**In the Matter of the Custody of**
**VICTOR WILLIAM HUTCHINS and MARY ALEXANDRA**
**HUTCHINS, Minors**

Civil J.D.R. No. 49-1969

Municipal Court of the Virgin Islands

Div. of St. Thomas and St. John

March 18, 1971

*District Court Opinion, see 8 V.I. 223.*

MR. ALEXANDER FARRELLY, Attorney, *for the petitioner*
MR. WARREN YOUNG, Attorney, *for the respondent*

HOFFMAN, *Judge*

OPINION

The above entitled matter came on for a full hearing on March 8 and 9, 1971 in compliance with the Order of the District Court of August 17, 1970 requiring a "full and plenary hearing." In open Court, testimony was heard from Mr. Victor Hutchins, Mrs. Sandra Hutchins, Dr. Donald Beacock, Mrs. Mary C. Hutchins, and Mrs. Anne Bartlett. The Court also conducted an interview with the minor children, Victor William Hutchins and Mary Alexandra Hutchins in the presence and with the consent of both attorneys, Mr. Alexander Farrelly (who represented the petitioner, Victor Hutchins) and Mr. Warren Young (who represented the respondent, Mrs. Mary C. Hutchins). In addition, the deposition of Dr. Malcolm Marshall was received in evidence without objection.

After carefully considering all of the evidence before it, the Court makes the following factual findings and disposition as set forth in the text that follows:

The parties, Victor H. Hutchins and Mary C. Hutchins, were divorced in September 1963, after having been married thirteen years. At the time of the divorce, they had two minor children, Mary Alexandra who was then about eight

months old, and Victor William, who was then about two and a half years old.

The final divorce decree of September 30, 1963, awarded to the respondent, Mary C. Hutchins, the custody of the two minor children subject to the petitioner's right of reasonable visitation. Subsequent to the divorce and until the time he moved to St. Thomas, the petitioner, Victor Hutchins, lived in Florida approximately fifty miles from the respondent's home, and he frequently visited the children on weekends and took them on outings. During this period the children spent most of their time with the respondent in her four bedroom home in Orlando, Florida, where they were adequately fed, clothed and cared for. Either in December of 1964 or in the early part of 1965, the petitioner moved permanently to St. Thomas, V.I. Shortly thereafter, petitioner's mother, Goldie, brought both children to St. Thomas for a visit which lasted approximately four months. During the next year, 1966, both children again visited the petitioner in St. Thomas; this time for approximately two months.

Over the Christmas vacation of 1966 (either late in December 1966, or in January 1967) Sandra Alexandra, who was not yet four years old, came to St. Thomas to visit once again with the petitioner. She has remained in St. Thomas with the petitioner continuously from that time until the present except for a brief period over Christmas of 1968 when she went to visit the respondent in Florida for approximately two weeks. Sandra Alexandra is presently eight years old.

At the time Sandra Alexandra came to St. Thomas over the Christmas vacation of 1966, Victor William was already showing signs of emotional disturbance and was having difficulty getting along with his peers at the Achenbach School in Florida. It was for this reason that the respondent at that time decided to keep him in Florida

rather than to send him to St. Thomas with his sister to visit the petitioner. Victor William's emotional status, however, did not improve; and somewhere between March and May of 1967, respondent was informed by the Achenbach School that Victor could not be handled there and that he would not be allowed to continue at that school after the close of the school year. Rather than seeking psychiatric or psychological help for her son, respondent enrolled him at College Park Kindergarten in the fall of 1967 at the advice of her cousin, Anne Bartlett, who apparently had sent at least one of her own children there previously. This kindergarten was just an ordinary kindergarten (it was not affiliated with any college, contrary to what the name might otherwise indicate) and was not able to offer Victor William any professional help. While respondent testified that Victor William showed marked improvement and that his conduct was perfectly normal after only three weeks of attendance at that school, the Court finds that this simply was not the case.

Victor William remained with his mother in Florida until May 1, 1968 when the first of a series of Florida decrees granted petitioner's petition to modify custody and gave him legal custody of the two minor children, Mary Alexandra and Victor William.

When Victor William first came to St. Thomas in May of 1968, pursuant to this Florida decree, he was seven years and approximately two months old and he was badly in need of professional help in order to help him cope with his emotional problems, which were described in these words by Dr. Marshall: "He (Victor) had a very low tolerance for stress and for frustration. Even in situations that normally aren't particularly stressful for children, he still showed a lot of signs of tension."[1] By this time, also,

---

[1] Deposition of Dr. Malcolm Marshall taken February 26, 1971 in Detroit, Michigan, page 8.

the petitioner had remarried (this marriage took place in September of 1967) so that when Victor William came to live in St. Thomas he had both his father and stepmother to take care of him. Since coming to St. Thomas in May, 1968, Victor William has lived here continuously except for a brief period over Christmas of 1968 when he and his sister went to visit the respondent in Florida for approximately two weeks. Victor William is now ten years old.

Shortly after his arrival in St. Thomas, Victor William was taken to the Bureau of Mental Health. Continuous care was administered to him there from this time until June, 1970 by the following doctors: Dr. Robert Dalton, Dr. Malcolm Marshall, and Dr. Donald Beacock.

On March 14, 1969, the District Court of Appeal of Florida, Second District, reversed the May 1, 1968 order of Judge Hall which had awarded to the petitioner custody of both minor children and remanded the case to the Circuit Court of the Fifth Judicial Circuit, Lake County, Florida for further proceedings.

Subsequently, the Circuit Court of the Fifth Judicial Circuit, Lake County, Florida upon the agreement of the petitioner, ordered him to produce the children in Florida on July 5, 1969 so that they could visit with their mother, the respondent herein, and also so that a Dr. E. Michael Gutman, psychiatrist, could examine both children between July 5, 1969 and July 11, 1969, apparently in order to assist that court in determining what the best interests of the children then required.

The petitioner, despite his agreement to deliver the children in Florida, never did this. Instead, he commenced proceedings in the Municipal Court of St. Thomas on July 7, 1969 for custody of the children basing his claim at least in part on Judge Hall's decree of May 2, 1968, even though he was aware at this time that that decree had been subsequently overruled. By omitting this fact from his petition

as well as from the statements he made to this Court at the ex parte hearing of July 7, 1969, the petitioner misrepresented the true state of affairs existing at that time. Because of his failure to return the children to Florida on this occasion and for his subsequent failures to deliver the children to Florida as well as for his failure to continue making payments of alimony and support to his wife, the petitioner has been adjudged in contempt of court on a number of occasions in Florida.

At this point it is no longer feasible to defer the resolution of this matter to the Florida courts.[2]

This Court approaches this case from the standpoint that the Florida courts have determined (up until April 2, 1968, the date of the extensive hearing before the Circuit Court of the Fifth Judicial Circuit, Lake County, Florida) that custody of the children should be with the wife. We arrive at this starting point by virtue of the opinion of the District Court of Appeal of Florida, Second Circuit, of March 14, 1968 as hereinbefore referred to.

Indeed, we consider the opinions and decrees of the Florida courts as binding upon us as if the same had been made by a court of competent jurisdiction here in the Virgin Islands. Of course, just as Florida custody decrees are subject to modification in Florida, the Virgin Islands, having independent jurisdiction of this particular case by virtue of 4 V.I.C. § 172(3),[3] also considers prior custody

---

[2] However, it should be noted that the Third Circuit Court of Appeals in Bergen v. Bergen No. 19349 — F.2d — (decided March 5, 1971), a case in some respects quite similar to the case at bar in that it too involved "competing jurisdictions" in the context of a child custody contest, had this to say about the role of comity:
  Nevertheless, a parent with whom a child is visiting in another jurisdiction ordinarily should not be permitted, except in clearly compelling circumstances, to use the occasion to seek to divest the other parent of a judicially decreed right of custody.

[3] 4 V.I.C. § 172(3) provides in part:
  . . . the juvenile and domestic relations division of the municipal court shall have jurisdiction . . .
  (3) To determine the custody or guardianship of the person of any child under 18 years of age living within the judicial division, for the adoption of a minor and to terminate parental rights in connection with such proceedings;

decrees of Florida subject to modification if the facts so require.

■ We, therefore, treat this case as one brought by the petitioner, Victor Hutchins, for a modification of custody. As such, it was his burden to prove to the Court that "there has been a change of conditions affecting the welfare of the child, and that the proposed change in custody would be for the child's best interests."[4]

■ Since this Court has been convinced by the evidence before it that the petitioner has met this burden, custody will be awarded to him with the admonishment that he comply with certain conditions as set forth at the end of this opinion. A number of factors have lead this Court to conclude that legal custody should be awarded to the petitioner. These include:

1.) The length of time that petitioner has had actual physical custody over both children:[5]

Mary Alexandra—from January, 1967—present.
Victor William—from May, 1968—present.

2.) Petitioner has remarried and his present wife, Sandra Hutchins, is eminently qualified to give guidance to and to serve as a good mother for both children. Mrs. Sandra Hutchins is an elementary and preschool teacher, having graduated from Wesleyan in 1963 and having had Montessori training (a progressive method of education).

While it is true that at the April 2, 1968 hearing in Florida the petitioner was already married to Mrs. Sandra Hutchins, their marriage was only about a half year old at that time. This Court now has the benefit of hearing this case almost three years later. The relative stability of a marriage of three and a half years as against a marriage of only six months, needs little comment. This is another

---

[4] Kellogg v. Kellogg, 213 P.2d 172, 174 citing other cases.
[5] In this connection see the opinion of Judge Joseph in In re Loubriel 6 V.I. 542 (1967).

circumstance that has changed since the Florida Court heard this matter.

3.) Expert testimony which emphasizes the need of the children and that of Victor in particular to have a home where there is a male father figure and also to have a stable home life. To uproot these children after so much time has elapsed and put them into a different environment where a male figure is lacking would not be in the children's best interests.

4.) Expert opinion which indicates that Victor William, once quite emotionally disturbed, has, since coming to his present home in St. Thomas, made remarkable improvement to the extent that he presently responds within normal limits to what might otherwise be considered stressful situations.[6]

5.) The successful adjustment both children seem to have made here in St. Thomas. There was unrefuted testimony that each child was, at the time of this hearing, socially well-adjusted. The sibling rivalry which was much in evidence when the children first came to St. Thomas has been replaced by a much healthier, more cooperative relationship. In addition, it appears that both children are making satisfactory progress in school.

6.) The preference both children expressed in chambers for continuing to live in St. Thomas rather than returning to Florida.

The Court finds both petitioner and respondent to be fit parents to have custody of the children. Certainly there can be no question that this was true as of April 2, 1968, when the Circuit Court of the Fifth Judicial Circuit, Lake County, Florida after a full hearing on the matter, so found. Nothing in the testimony that this Court has heard would

---

[6] Deposition of Dr. Malcolm Marshall taken February 26, 1971 in Detroit, Michigan, page 30.
Also see testimony of Dr. Donald Beacock.

lead it to the conclusion that this situation (the fitness of the parties) has changed since that time.

Despite this finding that both parents are fit, the Court for the reasons previously enumerated finds that there has been a change of conditions materially affecting the welfare of the children, and that these changed conditions require this Court, in the interests of the children, to award legal custody to the petitioner.

In making this determination, the Court is mindful of the fact, as previously indicated, that petitioner is presently in contempt of court in Florida for failure to obey its orders. While this is a factor for the Court to bear in mind in determining custody, it is not conclusive,[7] and in this instance there were other factors sufficient to outweigh this consideration.

It should be borne in mind, however, that this Court will scrutinize very carefully any future violations of court orders by the petitioner herein, since a pattern of such activity might well reflect on his fitness as a parent.

It is hereby ORDERED that legal custody of the two minor children, Mary Alexandra and Victor William be awarded to the petitioner, Victor H. Hutchins, Jr., conditioned on the visitation rights of the respondent and obligations of the petitioner as set forth below.

It is further ORDERED that petitioner pay to respondent the sum of $1,000 for Attorney's fees. Costs other than Attorney's fees to be taxed against petitioner within 15 days from date.

### VISITATION RIGHTS

1) For the balance of 1971 the respondent shall have no visitation rights with her son Victor William.

2) From July 1, 1971 to August 12, 1971, the daughter Mary Alexandra shall be with her natural mother in Florida.

---

[7] Richton v. Richton, 195 N.E.2d 265, 270 (1963).

3) Commencing July 1, 1972, and thereafter, the son Victor William and the daughter Mary Alexandra shall be with their natural mother in Florida from July 1st to August 12th annually.

4) For a period commencing two days before Christmas day, and ending five days after Christmas day in alternate years with visitation commencing 1972 the daughter Mary Alexandra and son Victor William shall be with their natural mother in Florida.

5) During the above visitation periods respondent shall have exclusive custody of the children without interference by either the petitioner or his present wife, Mrs. Sandra Hutchins.

6) The obligations of the father Victor H. Hutchins, Jr., in respect to such visitation rights are as follows:

a) To arrange for the transportation of the children, at his expense, to Florida and return as indicated in (2), (3) and (4) above; and

b) To pay to the respondent in a lump sum two weeks in advance of each visitation (as described in (2), (3) and (4) above) an amount equal to $40.00 per week for the support of each child during the applicable period the same shall be visiting the respondent. This means that for (2) above petitioner will pay respondent on June 24, 1971 the sum of $240.00; that for (3) above petitioner will pay respondent on June 24, 1972 and every year thereafter the sum of $480.00; and that for (4) above petitioner will pay respondent on December 9, 1972 and every other year thereafter the sum of $80.00.

c) During the summer of 1972 while the children are in Florida for the summer, respondent shall make arrangements for them to be examined by Dr. E. Michael Gutman or another qualified psychiatrist who will make a written report as to the state of the children's mental health and submit the same to this Court by August 18, 1972. All of

the expenses incurred with respect to the above shall be borne by the petitioner.

Unfortunately the testimony adduced at trial makes evident that a great deal of animosity still exists between the parties, which has on at least one occasion manifested itself in very unbecoming conduct on the part of the respondent and the petitioner's present wife. Since the Court feels that such frictional incidents may very possibly have deleterious effects upon the children (particularly Victor), more frequent and less rigid visitations are not presently possible. Time it is hoped may soften the attitude of the parties so that hopefully the future may result in personal adjustments, which will permit the children to benefit from closer and less rigidly scheduled contacts with their parents and their families. If this does eventuate then the parties may in writing modify the Court's imposed terms of custody and visitation rights or other commitments—provided such agreement is filed, on execution, with this Court.

Judgment as directed herein shall be entered by the Clerk immediately following the elapse of the 15 day period allowed for taxing of costs other than attorney's fees.